### Jacob I. GANCHER
### v.
### Oveta Culp HOBBY, Secretary of Department of Health, Education and Welfare.

#### Civ. A. No. 4968.

United States District Court
D. Connecticut, Civil Division.

Jan. 12, 1955.

---

10. Serizawa v. Dulles, D.C.N.D.Cal., 134 F.Supp. 713, 714.

**462**

Howard R. Matzkin, Waterbury, Conn., for plaintiff.

Simon S. Cohen, U. S. Atty., Hartford, Conn., Francis J. McNamara, Jr., Asst. U. S. Atty., New Haven, Conn., for defendant.

ANDERSON, District Judge.

The question in this case is whether or not the appellant, Jacob I. Gancher, is entitled to the benefits of Title 42 U.S.C.A. Chapter 7, known as the Social Security Act. The case is here for review of a decision of the appeals council of the Social Security Administration of the Department of Health, Education and Welfare which had affirmed the decision of the Referee who heard the case and decided that the appellant was not entitled to old age insurance benefits.

The essential fact-finding portions of the Referee's report are as follows:

"The claimant in the instant case was born on April 12, 1882 and has been a practicing physician and surgeon in Waterbury, Connecticut, since 1906. The income from his professional services cannot be considered for purposes of acquiring quarters of coverage under the Act. * * * However, the claimant contends that he has acquired at least six quarters of coverage by reason of having been the secretary-treasurer of the Fredja Corporation during the period from December 1, 1950 through September 25, 1952 for which he was allegedly paid $300 per month.

"The record reveals that the Fredja Corporation was organized on December 1, 1950 with the claimant, his wife, and a daughter as the officers of such corporation. At such time three parcels of property, paid for by the claimant but owned by the claimant's wife, were conveyed to the corporation. Such property consisted of a building and two adjoining vacant lots. The building housed three apartments and the claimant's office. One apartment was occupied by the claimant and his wife, the second apartment by the claimant's son and daughter-in-law, and the third apartment was rented to an unrelated tenant.

"During the existence of the corporation, the claimant allegedly paid to such corporation rent for his apartment of $60 and office rent of $100 monthly. In addition, the corporation allegedly received monthly rent from the claimant's son of $100, and $78 from the occupants of the third apartment. Certain aspects of the rental income are not made too clear since in contrast to the allegation of $100 monthly rent having been paid by the son, certain evidence shows payments of only $50 monthly. However, further evidence indicates that an unmarried daughter made weekly payments of $10 for her occupancy of one room. Such rentals constituted the only income of the corporation although when one of the vacant lots was sold in July 1952 the proceeds from such sale ($953.17) were deposited in the corporation bank account. Reports indicating payment of wages of $300 monthly to the claimant were made to the Bureau of Internal Revenue covering the period from December 1950 to October 1952. In this regard certain other evidence indicates that the claimant actually received the purported salary payments in only three calendar quarters during the existence of the corporation. It also appears that about October 1951 the claimant purchased a new car, the

**463**

financing of which was handled through a local trust company. The monthly payments of $75 on the mortgage were paid from corporate funds to the bank beginning with November 1951. However, title to the car appears to have been in the name of the claimant's son. · * * *

" * * * There is nothing improper or questionable about a person entering bona fide employment for the express purpose of acquiring a wage record which will enable him to qualify for an old-age insurance benefit. Such action is clearly within the spirit, as well as the letter, of the law. However, it is a far different thing to create a relationship and give to certain payments the color of 'wages' for the purpose of qualifying under a law such as the one here in question. That is neither within the letter nor the spirit of the law. Even though the Fredja Corporation might have certain legal respectability as far as State law is concerned, its organization apparently for the sole purpose of having claimant as one of its officers, and presumably as an employee, so as to qualify for social security benefits appears to have been nothing but a sham. * * *

"It does not seem reasonable to consider the alleged payments made to the claimant as 'wages.' The picture of the claimant, as an individual, making rental payments to himself as an officer of the corporation and then, in turn, paying himself for his 'services' to the corporation approaches the farcical."

A study of the testimony shows that the Referee's conclusions which were adopted and became the basis for the Department's decision, were amply supported by substantial evidence. The foundation of the corporation, the "employment" of the appellant and his application for social security benefits were all features of what was intended to have been a slick scheme concocted in the mind of the appellant's son, Louis Gancher,

and engineered by him improperly to acquire contributions for his father's support from the Social Security Administration. In addition to the conclusions reached by the Referee and in further support of them, it is to be noted that there was a remarkable coincidence between the life of the corporation, November 28, 1950, to September 25, 1952, and the minimum period of six quarters of a year upon which a claim may be based and that the "salary" of the appellant, which was $300 per month out of an alleged gross corporate income of $348 per month, or a yearly salary of $3,600, was the exact amount needed to gain the maximum benefit, under the act.

The decision of the Social Security Administration is affirmed and the appeal is dismissed with costs.