**Alton J. RHOADS, Executor of the Estate of John A. Rhoads, and Lola Rhoads, Plaintiffs-Appellees,**

**v.**

**Marion B. FOLSOM, Secretary of Health, Education and Welfare of the United States of America, Defendant-Appellant.**

**No. 12118.**

United States Court of Appeals Seventh Circuit.

Feb. 21, 1958.

5 Cir., 81 F.2d 1011; Douglass v. Pan-American Bus Lines, 5 Cir., 81 F.2d 222.

George Cochran Doub, Asst. Atty. Gen., Robert S. Green, Attorney, Civil Division, U. S. Department of Justice, Washington, D. C., R. Tieken, U. S. Atty., Chicago, Ill., Melvin Richter, Attorney, Department of Justice, Washington, D. C., for appellant.

Charles A. Thomas, Rockford, Ill., for appellees.

Before DUFFY, Chief Judge, and MAJOR and HASTINGS, Circuit Judges.

MAJOR, Circuit Judge.

This appeal is from an order of the District Court reversing a decision of the Referee of the Social Security Administration. The principal question for decision is whether the findings of the Referee are supported by substantial evidence, as provided by Section 205(g) of the Social Security Act (42 U.S.C.A. Sec. 405(g)). The appellant contends that the Referee's findings are substantially supported and that the order of the District Court was, therefore, in error. Appellees contend to the contrary.

John A. Rhoads and Lola Rhoads, his wife, filed application for Old Age and Wife's Insurance benefits, which was allowed. Payments were received by them, beginning January 1953 and continuing until February 1955, when they were suspended by the Bureau for the reason that it was determined that Mr. Rhoads, commencing May 1953, had received wages of more than $75 per month, first from the Ogle Lumber Company and later from the Oregon Lumber Company.

Prior to January 1955, Sec. 203(b)(1) of the Social Security Act provided in substance that any individual under the age of 75 was not entitled to benefits for any month in which he rendered services for wages of more than $75.00. Section 203(b) (2) provided that under such circumstances the wife was not entitled to benefits paid upon her husband's wage record. Upon notification of the Bureau's determination, Mr. and Mrs. Rhoads asked for and were given a hearing before a Referee, who found that benefits had been improperly paid to both of them under the provisions of the Social Security Act. After a review by the

Appeals Council of the Social Security Administration, John and Lola Rhoads brought suit in the District Court, contending that the Referee's decision was not supported by substantial evidence and should be reversed. (Subsequent to commencement of suit, John Rhoads died, and Alton J. Rhoads, as Executor, was substituted as party-plaintiff.)

The record shows that for some twenty-five years prior to 1953, John A. Rhoads had been the manager of Midwest Lumber Company in Oregon, Illinois. The retirement age of 65, as provided by the Social Security Act, was reached by Mr. and Mrs. Rhoads in the summer of 1952. Sometime prior to January 1953, Mr. Rhoads went to the home office of the lumber company in Dubuque, Iowa, and arranged to be relieved of his duties as manager at the close of that year. During this conference it was agreed that Mr. Rhoads would stay on as manager until the first of 1953. It was further decided that Mr. and Mrs. Rhoads would be employed by the lumber company, and for their services each would receive the sum of $75 per month. This conference was followed by one in Oregon, Illinois, between Mr. Rhoads and Mr. Daniels, who was the assistant secretary-treasurer of the company, at which time it was agreed that John and Lola Rhoads each be put on the payroll of the lumber company at a salary of $75 a month, their work to begin January 1, 1953. It was further agreed that Mrs. Rhoads was to take her orders from Mr. Rhoads. This arrangement was continued until May 1, 1953, when for personal reasons they discontinued their work for this company.

Immediately thereafter, Mr. and Mrs. Rhoads were employed by the Ogle Lumber Company, also of Oregon, Illinois, under the same arrangement as they had with Midwest. The Ogle Lumber Company was owned by Mervin Rhoads, a son of Mr. and Mrs. Rhoads, and one Mongan. Mervin Rhoads was in charge of the actual operation of the company. Mr. and Mrs. Rhoads were placed on the payroll of Ogle at a salary of $75 per month each. Each received checks in the amount of $75 during the periods of their employment with the lumber companies, which were deposited by each in separate bank accounts and spent as each saw fit. Neither had any control of or interest in the bank account of the other.

The record discloses beyond any dispute that Mrs. Rhoads, as well as her husband, rendered valuable services to each of the lumber companies. Mrs. Rhoads possessed skill as an interior decorator and assisted customers in the selection of materials and in the decoration of their homes. Mr. and Mrs. Rhoads had decorated their own home, which was often shown to prospective customers. The Referee's order is based upon the finding or conclusion that Mrs. Rhoads was not an employee. As already shown, the direct and positive testimony is to the contrary. The most that can be said of the testimony upon which the Referee relies is that there were some witnesses connected with the Midwest Lumber Company who had no knowledge of the arrangement by which both Mr. and Mrs. Rhoads were employed and each paid a salary of $75 per month. There are other circumstances relied upon in support of the Referee's finding which are of little, if any, probative value. For instance, it was shown that the lumber companies failed to report in the Employer's Social Security Quarterly Returns wages paid to Mr. and Mrs. Rhoads. Obviously, this was not binding upon Mr. and Mrs. Rhoads. The Referee also reasons that because Mr. Rhoads did more work than his wife, it can be inferred that the monthly payment of $75 to her in reality was payment to him for services which he rendered, and this in spite of the testimony as to the agreement and the fact that the $75 was paid to and utilized by her. It was also reasoned that because Mrs. Rhoads rendered similar services prior to her husband's retirement, for which she received no compensation, it may be inferred that the money paid her after his retirement was not compensation for services rendered by her. This is a non-sequitur and also ignores the agreement of the parties.

**380**

■ It may be true that the arrangement by which Mr. and Mrs. Rhoads were each to be paid was for the purpose of bringing them within the coverage of the Social Security Act. Even so, we see no legal impropriety in their so doing if in fact they both rendered services for which they were paid in accordance with an agreement. It has often been held that a taxpayer may arrange his business affairs in any manner which the law permits in order to avoid the payment of a tax. Applying the same principle, we think Mr. and Mrs. Rhoads could properly enter into an agreement with the lumber companies by which they would each become employees and be paid for their services. The terms of that agreement were a matter for the parties and binding, providing, of course, it was made in good faith. There is no proof, not even the contention, that it was otherwise made.

■■ We are not unmindful of the provision that the finding of the Referee is conclusive if supported by substantial evidence. The rule has often been applied by this and other courts. The mere statement of the rule, however, is not determinative. There remains the question as to whether the finding on the entire record is substantially supported. We agree with the District Court that it is not. The finding of the Referee that Mrs. Rhoads was not an employee is based upon inferences, completely dispelled by the direct and positive testimony, and by a process of reasoning with which we do not agree.

■ Finally, appellant contends that even though the case be affirmed, the judgment entered by the District Court is improper. The Court, on April 2, 1957, entered findings of fact, conclusions of law and a judgment order. On May 31, 1957, appellant filed his notice of appeal from the order of April 2, 1957. In the meantime, on April 25, 1957, the government filed a motion to vacate the Court's order insofar as it entered findings of fact, which motion was granted May 9, 1957. On the same date as the filing of the notice of appeal, appellant also filed a motion to vacate portions of the judgment order entered April 2, 1957. This motion was granted June 7, 1957, and a modified order entered. Appellant in his brief states, "Although the court, on motions by the Government, subsequently vacated its findings of fact and conclusions of law, and modified its judgment order to conform with law, it may be that these modifications were jurisdictionally defective in that they were made too late, and accordingly that they were of no effect."

Thus, appellant concedes that the order of June 7, 1957 was in proper form, but raises the question that the Court was without jurisdiction to enter it. It will be noted that appellant does not assert that the order was void for lack of jurisdiction but only that it "may be." This suggestion must be based on the theory that the Court lost jurisdiction on May 31, 1957, when appellant filed his notice of appeal. The situation presents a perplexing problem because appellant on the same date that his notice of appeal was filed also filed a motion to modify the judgment from which the appeal was taken, and it was upon appellant's motion that the Court later entered a modified and proper judgment. There is no way of ascertaining from the record which was filed first, that is, the notice of appeal or the motion to modify the judgment. Likewise, there is no way of determining whether the District Court lost jurisdiction or whether this Court acquired jurisdiction by reason of the notice of appeal. If the District Court retained jurisdiction to enter its modified order, there is reason to think that this Court did not acquire jurisdiction and that the appeal should be dismissed for that reason. However, no question is raised by the parties as to the jurisdiction of this Court and under the circumstances we conclude that we have jurisdiction. By the same token, we must also assume that the District Court was without jurisdiction to enter its order of June 7, 1957, even though it was entered at the instigation of appellant.

Therefore, in view of the circumstances, we affirm the decision of the District Court reversing that of the Referee. At the same time, we reverse the order of April 2, 1957 (the order appealed from), with directions that it be vacated and that an order be entered in conformity with law. It is further ordered that the parties bear their own cost.