**Ernest L. ENKE, Petitioner**

*v.*

**Abraham RIBICOFF, Secretary of Health, Education and Welfare, Respondent.**

**Civ. T. No. 3953.**

United States District Court
S. D. Florida,
Tampa Division.

Sept. 6, 1961.

J. Hardin Peterson, Lakeland, Fla., for petitioner.

Edward F. Boardman, U. S. Atty., Miami, Fla., Paul E. Gifford, Asst. U. S. Atty., Miami Beach, Fla., for respondent.

LIEB, District Judge.

This is an action brought under § 205 (g) of the Social Security Act, as amended, hereinafter referred to as the Act (42 U.S.C.A. § 405(g), which provides for judicial review of any final decision of the Secretary of Health, Education and Welfare, hereinafter referred to as the Secretary.

The matter came on for final hearing before the Court, sitting without a jury, upon the undisputed facts established in the administrative proceedings before the Social Security Administration, the record of which is submitted to the Court by the Secretary.

Said record reveals that the plaintiff, Ernest L. Enke, was born on September 24, 1893, and became of retirement age (the retirement age being 65 under the Act then in force) on September 23, 1958.

Prior to the year 1954, the plaintiff was engaged in various business enterprises, mostly in livestock farming and feeding, which business was excluded from social security coverage under the Act. Although at one time tax deductions were made from the plaintiff's earnings, while he was employed as an insurance agent, it was later determined that said earnings were not subject to the Act

and consequently no quarterly coverage was credited to the plaintiff for said earnings. In the year 1954, the plaintiff, pursuant to an informal dealership agreement with the Capp Company, undertook to sell pre-cut buildings manufactured by said company. During 1954, the plaintiff failed to earn any commission from the sale of the Capp homes, thus acquiring no quarterly coverage under the Act for said year. In 1955, the plaintiff earned $1,000 from the sales of Capp homes in the form of commission. Out of this sum he paid $150 to his associates and expended about $100 in connection with said sales, giving him a net earning of $750, which sum in turn gave him four quarters' coverage under the Act for 1955.

On or about August, 1955, the plaintiff terminated his dealership with the Capp Company and immediately undertook a dealership with W. G. Best Co., manufacturer of prefabricated homes.

On August 23, 1955, the plaintiff and his wife, Lottie E. Enke, executed Articles of Incorporation whereby they, as incorporators, organized an Iowa corporation under the name of Enke Construction Company for the purpose of conducting a general construction business and for the transaction of any other related businesses, including the buying and selling of real estate as well as properties of all kinds.

The authorized stock of the corporation was 150 shares, of $100 par value each, which were to be issued at par for cash; and the life of the corporation was to be 20 years, or until it was dissolved by a vote of two-thirds of the total shares at an earlier date. Plaintiff Ernest Enke was elected as director, president and treasurer, and his wife, Lottie E. Enke, was elected as director, vice president and secretary, both to serve in their elected capacity until the annual meeting of the directors, which was to be held in December of each year. The incorporators duly complied with all legal requirements of the State of Iowa, and on August 29, 1955, the Secretary of State of the said State issued the Certificate of Incorporation to Enke Construction Company. On October 5, 1955, the plaintiff caused the issuance of 75 shares of authorized stock to himself and 75 shares of the authorized stock to his wife in exchange for a previous deposit of $14,-652.92 in the corporate account, made by the incorporators, Enke and his wife.

On November 25, 1955, the corporation commenced the construction of a pre-fab home manufactured by Best, on a lot owned by plaintiff and his wife, individually. On December 27, 1955, the plaintiff and his wife conveyed said lot to the corporation for the stated consideration of $700.00, and caused the issuance of a corporate check in that amount to the plaintiff.

Materials and labor used in the construction of said house were obtained and paid for by the corporation. The construction was completed by March, 1956.

Neither the plaintiff nor his wife drew any salaries during the year 1955 from the corporation. At the first annual meeting of the directors, held on December 30, 1955, the plaintiff and his wife re-elected themselves to their respective offices and authorized the corporation to purchase a truck from the plaintiff to be paid for by a corporate note. They further authorized the corporation to pay the plaintiff the sum of $4,200 per annum as salary, and the sum of $50 per month as salary for Lottie E. Enke. Said authorization also provided to pay the plaintiff's salary by notes bearing 6% interest per annum when necessary. The $50 per month salary voted for Lottie E. Enke was discontinued by a corporate resolution adopted at a special meeting of the directors held on April 6, 1956. The corporation kept no books reflecting its current liabilities as they accrued. All incomes and expenditures of the corporation were kept in the form of a running account in a journal. The payroll accounts of the corporation do not reflect actual payments of salary to the plaintiff, whether by cash or by note. No income taxes were withheld from the

salaries allegedly paid to the plaintiff but the sum of $4,200 was reported by the plaintiff as wages earned from Enke Construction Co. for the years of 1956–1957, and $2,800 for the year 1958.

During the summer of 1957, the plaintiff discontinued his dealership with W. G. Best Company, and on January 7, 1957, received a dealer franchise from U. S. Homes, Inc., of Des Moines, Iowa, authorizing him to sell cut-on-the-lot house packages manufactured by said company. Although this franchise was given to him, individually, and not to the corporation, some correspondence concerning this franchise was addressed to the corporation, and the one and only commission check in the amount of $561.52 received by the plaintiff from U. S. Homes, Inc., was made out to the corporation and endorsed by the plaintiff as president of the Enke Construction Company.

In addition to these business activities of the plaintiff during the years of 1955 to 1958, the corporation purchased two calves for $172.18, which, after having been pastured on land owned by the plaintiff, individually, free of charge, were sold by the corporation for $220.55.

The Best home constructed by the corporation in 1955, and early 1956, at a cost of $8,602.70 excluding the cost of the land and insurance, was sold back to the plaintiff in March, 1958, for $9,750, and was later sold by the plaintiff, together with adjoining acreage owned by the plaintiff, as a single unit to a third party. The one and only salary payment made by the corporation to Lottie E. Enke was the sum of $117.00 paid on January 30, 1956. The plaintiff, Ernest L. Enke, received the following salary checks from the corporation:

$1,050.00 on July 19, 1956
   300.00 on Nov. 30, 1956
   600.00 on April 12, 1957
1,026.37 on July 9, 1958
   668.50 on October 8, 1958
6,825.65 on March 21, 1958 (for notes with interest)

representing a total of $10,470.52 received by the plaintiff from the corporation in the form of checks during the years 1956, 1957 and 1958.

The March 21, 1958, check in the amount of $6,825.65, was in discharge of the following notes and interest thereon, issued to the plaintiff by the corporation:

| Note dated | | in amount of |
|---|---|---|
| Note dated July 19, 1956, | in amount of | $1,029.00 |
| " " October 11, 1956, | " " " | 1,029.00 |
| " " December 30, 1956, | " " " | 729.00 |
| " " April 12, 1957, | " " " | 426.37 |
| " " July 1, 1957, | " " " | 1,026.37 |
| " " October 4, 1957, | " " " | 1,026.37 |
| " " January 14, 1958, | " " " | 1,026.37 |

These notes total $6,292.48, or $553.17 less than the amount of the check paid to the plaintiff by the corporation in discharge of the notes on March 21, 1958. This difference represents the 6% interest provided for by the Agreement. The total amount received by the plaintiff from the corporation in the form of checks and notes during the years in question, exclusive of the check of March 21, 1958, in payment of the notes, amounted to $9,937.35.

On September 24, 1958, the plaintiff reached the age of 65, which was then the retirement age under the Act. On October 22, 1958, the plaintiff and his wife, by a special resolution, voted to dissolve the Enke Construction Company; and after notice of dissolution was duly published, the State of Iowa duly certified the dissolution of the corporation on November 15, 1958. The remainder of the corporate assets were distributed to the plaintiff and to his

wife as the sole stockholders of the corporation.

The plaintiff filed his application for old age insurance benefits on October 8, 1958, with the Bureau of Old Age and Survivors Insurance, Social Security Administration. Lottie E. Enke, his wife, filed her claim for wife insurance benefits under Section 202(b) of the Act on the same date. On July 29, 1959, The Bureau notified the plaintiff that he was not entitled to old age insurance benefits because he did not have the requisite number of quarters' coverage at the time he reached his retirement age inasmuch as the salary payments reported for the plaintiff for the years 1956, 1957 and 1958 were not accepted as "wages" within the meaning of the Act but, in the opinion of The Bureau, these payments were actually a return of capital which could not be included in his wage record for Social Security purposes.

The application of Mrs. Enke for wife insurance benefits was also denied by The Bureau on the ground that since her husband was not a "fully insured individual" at the time he reached the age 65, she would be ineligible for the benefits she was seeking. The plaintiff disagreed with this decision of The Bureau and on August 11, 1959, filed a request for reconsideration. In support of his request, the plaintiff submitted to The Bureau statements from two banks relating to the banking activities of the corporation and a statement from the plaintiff's former legal counsel, which said statement recited in essence that the sole and exclusive purpose for incorporating the construction business of the plaintiff was a desire to limit the personal liability of the plaintiff which he might incur in connection with said business. Upon reconsideration, The Bureau adhered to its original decision, whereupon the plaintiff filed his request for a hearing. The Hearing Examiner, sometimes referred to as the Referee, appointed under the Act, after having taken oral testimony of the claimants, Mr. and Mrs. Enke, and after having considered the entire record, affirmed the previous decision of The Bureau.

The decision of the Referee was based on his conclusions that the corporate structure set up by the plaintiff was a sham and a device, and there was no plausible reason for the incorporation except to evade the provisions of the Act, which limits eligibility to old age insurance to individuals who have acquired the requisite quarters of coverage through earnings from self employment or real wages. Although the Referee felt that in view of the determination that plaintiff did not earn any real wages during the years in question within the meaning of the Act, and the issue whether plaintiff acquired coverage through constructive receipt of wages was immaterial, the Referee held that should the issue of constructive receipt of wages become material, the issuance of notes by the corporation to the plaintiff did not legally constitute payment of salary. The decision of the Referee was later affirmed by the Appeals Council, which rendered the Referee's decision the final administrative decision of the plaintiff's claim under the Act.

The plaintiff then instituted this action pursuant to § 205(g) of the Act seeking a reversal of this final administrative determination of the defendant.

The question which must be resolved by the Court can be simply stated as follows: Was Ernest L. Enke, the plaintiff, a "fully insured individual" within the meaning of the Act on September 23, 1958?

According to the pertinent sections of the Act, the plaintiff would have been fully insured on that date if he had acquired 15 quarters of coverage at any time since the enactment of the Act, or 10 quarters of coverage after 1954 and before June 1, 1958. Section 213(a) of the Act defines quarterly coverage as a period of three calendar months ending on March 31, June 30, September 30 and December 31, during which an individual has been paid $50 per month or more in wages, or has earned $100 or more as

**324**

self employment income. It is not in dispute that the plaintiff did not acquire any coverage before 1954. It is also without controversy that he did acquire four quarters of coverage during 1955 from his earnings with the Capp Co. Thus, if the plaintiff acquired at least six quarters of coverage between January 1, 1956, and June 1, 1958, he was a fully insured individual, and consequently entitled to the old age insurance benefits he is seeking. The Referee, in discarding the corporate entity of Enke Construction Company, held same to be a sham and a device and concluded that there was no bona fide employer and employee relationship between said corporation and the plaintiff and therefore all monies received by the plaintiff during the pertinent period cannot be considered as real wages but the return of invested capital.

■ The Court is not unmindful of the statutory admonition that the findings of the Referee shall be conclusive, if supported by substantial evidence; 42 U.S.C.A. § 405(g). This conclusive effect has been extended by judicial interpretation to all reasonable inferences drawn from such facts by the Referee. United States v. LaLone, 9 Cir., 152 F.2d 43; Gray v. Powell, 314 U.S. 402, 411, 62 S.Ct. 326, 86 L.Ed. 301; N. L. R. B. v. Hearst Publications, Inc., 322 U.S. 111, 130–131, 64 S.Ct. 851, 88 L.Ed. 1170; Rafal v. Flemming, D.C., 171 F.Supp. 490. The mere statement of the rule, however, is not determinative. The question before the reviewing Court is still the correctness of the findings made and the ultimate conclusions reached by the Referee in the light of the entire record. If the Referee in reaching his ultimate conclusions applied standards which are arbitrary, as a matter of law, the Reviewing Court is duty bound to set aside such conclusions. Rhoads et al. v. Folsom, 7 Cir., 252 F.2d 377.

■ In the instant case, the Referee concluded that the corporation was organized for the sole and exclusive purpose of affording the plaintiff an opportunity to qualify in a short time for the maximum benefits under the Act, basing this conclusion on the uncontroverted facts that the plaintiff's salary was fixed at the exact amount which would have given the maximum benefits under the Act; that the corporation was dissolved almost immediately after the plaintiff reached his legal retirement age, although it was authorized to exist for twenty years. Assuming arguendo that it is entirely reasonable to make that inference from these facts, said inference would clearly be insufficient as a matter of law to justify the ultimate conclusion that the plaintiff was not a "fully insured individual" within the meaning of the Act.

■ It is now established law that there is nothing improper or questionable about a person entering a bona fide employment relationship for the express and even admitted purpose, which is not the case in this controversy, of acquiring a wage record which would enable him to qualify for old age insurance benefits. Such action is clearly within the letter and the spirit of the Act. See Flemming v. Lindgren, 10 Cir., 275 F.2d 596; Stark v. Flemming, 10 Cir., 283 F.2d 410; Rhoads v. Folsom, 7 Cir., 252 F.2d 377; Rafal v. Flemming, D.C., 171 F.Supp. 490.

■■ The Referee, in an attempt to further buttress his ultimate conclusion that the plaintiff was not a fully insured individual within the meaning of the Act, inferred from the facts just stated that the corporation was a sham and a device and therefore could not qualify under the Act as a bona fide employer, and that consequently the plaintiff could not have been a bona fide employee of said phantom corporation. This inference is clearly unwarranted in the light of uncontroverted facts in evidence. The corporation was duly and legally organized; its affairs were conducted in strict conformity with the corporate laws of its domicile; it was recognized by all dealing with it, including the State of Iowa, as a validly existing corporation. There is no factual or legal basis to conclude that it was a sham and a device, and the Court is constrained to hold that the conclusion

reached by the Referee on this issue is factually and legally incorrect. This holding, however, would not compel a reversal of the Referee inasmuch as it is clear that, although the corporation involved is recognized and accepted as a validly existing legal entity, the plaintiff still would not be entitled to the benefits he is seeking if, in fact, his employment by the corporation was not real and bona fide, but merely a simulated one. Such an employment would be, of course, discarded for obvious reasons, and the so-called earnings derived from such an employment could not be considered as wages within the meaning of the Act. In reaching this conclusion, the Referee relied on the following uncontroverted facts: First, the corporation was not at any time in the financial condition which would have permitted the payment to the plaintiff of the salary agreed upon. Second, the business activities of the corporation were quite limited during the years in question. Third, the salary payments to the plaintiff bore no reasonable relationship to the alleged services rendered by the plaintiff to the corporation, but were strikingly disproportionate to the services rendered. The reliance of the Referee on these facts in support of his conclusion is misplaced. It is now recognized and accepted by the Courts that the fact that a corporation is not in a financial position to pay the salary of a corporate officer is immaterial unless it is evident and clear that the character and potentialities of the business are such that the claimant must have known at the time the salary payable to him was agreed upon that the business *could never pay a salary sufficient* to qualify him for the insurance benefits of the Act. See concurring opinion of Judge Pope in Flemming v. Lindgren, supra, 275 F.2d at page 598.

The record is uncontradicted that the plaintiff was in the business of selling pre-cut or pre-fab homes, manufactured by others, prior to incorporation. The corporation continued the same business and built a home with the idea of reselling the same and making a profit on the transaction. It is true that plaintiff was quite unsuccessful in his effort to sell the Best Home; but business adversity would not warrant the conclusions that the relationship was a sham and that monies, paid to the plaintiff while the corporation did not make any money, cannot be recognized as wages under the Act.

It is also without substantial controversy that after the completion of the Best Home the corporation did not build any other and did not intend to build any other until that one was sold. But the Best Home had to be sold by someone, and the efforts made by the plaintiff to accomplish this were nevertheless efforts expended on behalf of the corporation. After the sale of the Best Home, the plaintiff endeavored to continue to sell homes manufactured by U. S. Homes. Even if the Referee would be justified in disbelieving the entire testimony of Mrs. Enke, that the plaintiff was out on the road constantly in order to sell the Best Home, he cannot overlook the undisputed fact that said home was built by the corporation for resale and for profit, and not for the individual use of the plaintiff. The record is devoid of any evidence which indicates that, at the time the salary in question was agreed upon, it was obvious to the plaintiff that the corporation could never pay him a salary sufficient to qualify him for the benefits of the Act.

The Referee, in an attempt to bring the case at bar within the teaching of Gancher v. Hobby, D.C., 145 F.Supp. 461, 463, further concluded that, even if the plaintiff rendered services to the corporation, they were so minimal that they should be considered merely incidental to individual ownership and cannot be viewed as bona fide services rendered by a genuine employee. This Court disagrees with the Referee's interpretation of that case. In said case the plaintiff, a physician, caused the formation of a corporation and conveyed to said corporation two vacant lots and an apartment house owned by him, individually, which was occupied by himself, members of his im-

mediate family and a tenant who was not related to the plaintiff. Plaintiff elected himself as an officer of the corporation and voted himself a salary for the services of collecting rent from the tenants, which services he allegedly performed. The Court affirmed the Referee who held that, in spite of the apparent validity of the corporation as a legal entity, the payments received by the plaintiff as salary were a sham and not wages within the meaning of the Act. As stated by the Referee in that case: "The picture of the claimant, as an individual, making rental payments to himself as an officer of the corporation and then, in turn, paying himself for his 'services' to the corporation approaches the farcical."

It is manifest that the above case was decided correctly; but it is equally manifest that collecting rent from one's self, and then contending that payment of salary for doing so constitutes wages earned for services rendered, is a far cry from building a house, not for personal use but for resale, expending time and effort in doing so, and undertaking a franchise to sell homes on behalf of others as a franchised agent. The fact that the plaintiff's efforts were unsuccessful and were discontinued almost immediately when he reached the legal retirement age, which was the situation in Gancher, supra, does not detract from the important dissimilarities between the facts in the Gancher case and the facts involved in the case at bar.

■ The defendant also contends that the salary payments agreed upon bore no reasonable relationship to the services rendered by the plaintiff, and were strikingly disproportionate to said services. Assuming, but not admitting, that the Referee was correct in this conclusion, it still would be erroneous to disregard all payments made to the plaintiff on this ground. The defendant is not precluded to take exception to the amount paid to the plaintiff for his services if the evidence warrants such an action. It is clear that the plaintiff was entitled to some salary payments for the services he actually rendered to the corporation. Since it is not for this Court to make such a determination, the case must be remanded in order to afford an opportunity to make an objective reappraisal of the salary, and determine what salary would have been reasonable under the circumstances for the services rendered by plaintiff to the corporation during the years in question. In doing so, the defendant shall of course take into consideration all the attending facts and circumstances, and take additional evidence if there appears a necessity therefor. See Stark v. Flemming, supra.

■ As stated above, the Referee was of the opinion that the issue of whether plaintiff acquired coverage through constructive receipt of wages was immaterial, but held that should the issue of constructive receipt of wages become material the issuance of notes by the corporation to the plaintiff did not legally constitute payment of salary. In the opinion of the Court, this holding is clearly in error and totally contrary to the principles expressed in Emlen v. Social Security Board, 3 Cir., 148 F.2d 927.

It is, therefore, the holding of the Court that the decision of the defendant is reversed and the case is remanded to the defendant to re-evaluate consistent with the views indicated herein.

Final decree shall be submitted for signature by counsel for the plaintiff in accordance with the foregoing.

This memorandum opinion shall satisfy the requirements of Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A.