**John D. WOODWORTH, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary, Department of Health and Human Services, Defendant.**

**Civ. A. No. 86–0750.**

United States District Court,
D. New Jersey.

Aug. 10, 1987.

---

C. Christopher Kilbride, Madnick, Milstein, Mason & Weber, Asbury Park, N.J., for plaintiff.

Thomas W. Greelish, U.S. Atty., Stephanie Ebers, Sp. Asst. U.S. Atty., Newark, N.J., and Annette H. Blum, Regional Atty., David Whitney, Asst. Regional Atty., Dept. of Health and Human Services, for defendant.

## OPINION

COWEN, District Judge.

### I. INTRODUCTION

This is an action in which plaintiff seeks judicial review pursuant to § 205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), of a final determination of the Secretary of Health and Human Services ("Secretary") finding that the plaintiff's application for retirement insurance benefits was erroneously awarded and denying plaintiff's entitlement to a waiver of overpayment.

### II. PROCEDURAL HISTORY

On April 1, 1983, the plaintiff, John Woodworth, filed an application for retirement insurance benefits (Tr. 53–56). The application was initially granted, however, on July 16, 1984, Woodworth was notified that he had been overpaid from April 1983 through January 1984 because he lacked sufficient quarters of coverage for entitlement to retirement insurance benefits (Tr. 70–71). On April 5, 1984, Woodworth filed a request for reconsideration of this determination, and upon reconsideration the determination was found to be correct (Tr. 64–69). Woodworth then filed a request for hearing on September 4, 1984 to review the determination denying benefits. The

hearing was held before Administrative Law Judge Samuel J. Dantoni (hereinafter "ALJ"), (Tr. 23), who on April 29, 1985 issued a decision finding that Woodworth was not entitled to benefits for the period at issue and that he was overpaid benefits which could not be waived (Tr. 16–22). The decision of the ALJ became the final decision of the Secretary when the Appeals Council denied Woodworth's request for review on December 15, 1985 (Tr. 3–4). Woodworth then commenced this action on February 24, 1986, seeking a review of the Secretary's decision.

### III. FACTUAL BACKGROUND

Woodworth, who was born on November 11, 1919 (Tr. 53), filed an application for retirement insurance benefits on April 1, 1983. To qualify for benefits, Woodworth needed thirty quarters of coverage for fully insured status (Tr. 18). In his application for benefits, Woodworth reported self-employment income in 1979 extending through 1982, which he claimed entitled him to quarters of coverage during these particular years. However, the Secretary found that, despite Woodworth's having reported self-employment income as a result of activities between 1979 and 1982, these activities were not self-employment and the monies represented as self-employment income could not be applied against the required quarters of coverage to render him fully insured within the meaning of the Act (Tr. 18).

Woodworth was a designer of mechanical and electrical systems with a background as an electrical engineer (Tr. 37). He had been employed by the United States Government and in 1977 retired with a pension (Tr. 37–38). Woodworth stated that in 1979 he formed a partnership with his son for the purpose of investing in real estate property.[1] He indicated that the partnership owned an apartment house which produced gross rents of approximately $15,000.00,[2] and a piece of property in Long Branch (Tr. 36).

Woodworth testified that in 1979 he began to operate a maintenance and repair business with the purpose of earning a profit. He added that he never hired any employees or subcontracted any work (Tr. 31). Thereafter, he would work on the buildings which were owned by the partnership. The other partner performed no substantial maintenance or repair work (Tr. 47–48).

The partners entered into an agreement whereby each partner would be responsible for contributing $200.00 per month for repair work on the two apartment buildings which were in poor condition when first acquired (Tr. 41). Woodworth also stated that the partnership would pay him at the rate of $12.00 per hour and that his earnings would be credited against the required $200.00 per month contribution for any hours he worked (Tr. 44). Woodworth testified that he would make a monthly computer summary of his hours (Tr. 45). He noted that rather than taking cash he would reinvest it in the partnership, thereby increasing his equity in the company (Tr. 39–40). He stated that he paid Social Security withholding based on the $12.00 per hour rate he charged the partnership. Woodworth added that he never received a check from the partnership which would indicate that he received wages for the maintenance work he performed, rather, the evidence which substantiated his receipt of wages were the partnership books, tax returns, and computerized records (Tr. 43).

Woodworth noted that it would have cost the partnership $4,000.00 to $5,000.00 per year to hire someone to complete the jobs he performed (Tr. 44). Woodworth worked approximately 10 hours per week and indicated that the partnership determined which jobs he would perform (Tr. 44). Woodworth stated that he reported between $1,500.00 and $2,000.00 per year on his self-employment tax return (Tr. 45–46). He further noted that when he reported

---

1. The ALJ found the partnership to be a valid enterprise (Tr. 19).

2. The apartment house was sold in August 1983 for $85,000.00. This was the first profit accumulated by the partnership.

partnership income, he took the work he performed as an expense. *Id.*

Woodworth stated that he entered the partnership with the intention of making a profit and that he went into the maintenance business with the same intention. He indicated that he also performed maintenance work for some of his neighbors, but instead of accepting monetary payment for the work he was taken out to dinner in exchange for the work he performed (Tr. 49).

Woodworth added that the partnership operated on a negative cash flow, (Tr. 42), and that for IRS purposes expenses such as electricity, gas, water, fuel, heating, maintenance and repairs were deducted from the property's income, thereby creating a loss (Tr. 42). He noted that the partnership profits were split evenly and when one of the buildings was sold and a profit was made, the profit was distributed equally between the parties (Tr. 48).

The Appeals Council summarily affirmed the ALJ's decision which denied Woodworth benefits, and found that the overpayment of benefits to Woodworth could not be waived. The ALJ after considering the evidence, stated:

> It must therefore be concluded that the claimant was overpaid retirement insurance benefits, that the claimant lacked the required quarters of coverage in order to be entitled to retirement insurance benefits and that recovery of overpayment cannot be waived.

(Tr. 21). The ALJ noted the following with respect to the question of whether or not Woodworth was actually engaged in self-employment activities:

> The particular question for resolution is whether or not the claimant did in fact engage in self-employment, received self-employment income and therefore did actually earn quarters of coverage so as to be entitled to retirement insurance benefits.
>
> In order to be considered to be a self employed individual, an individual must be engaged in a trade or business or earnings as a partner in a partnership must be received from a trade or busi-

ness under Section 404.1081 of Regulation No. 4.

> In this particular case, it appears, based upon the facts that the claimant was not engaged in a trade or business for the years questioned. The facts reveal that the claimant never held himself out as engaging in any trade or business. He worked exclusively for the partnership and never for any other party. He never advertised. He determined how much should be paid out of the partnership monies. No actual cash transaction was ever incurred. No payments were ever paid over to the claimant. No contracts were ever drawn as to the nature of the work. The claimant determined what projects should be completed, when they should be completed, and only a paper transaction was ever made with respect to the income paid to the claimant. The claimant simply transferred the amount that he felt was due him to the capital account partnership. Based upon the characteristics of the transactions, it shows clearly that there was no arms length transactions involved in the claimants work activity and the claimant was actually involved in a boot strap situation where minimal taxes were paid in 1979 through 1982 in order to insure the claimant's entitlement to retirement insurance benefits for an extended period of time. The characteristics of the claimant's activities and the method in which the business he was engaging in was transacted and the method of payment persuaded the undersigned to conclude that the claimant was not engaged in a trade or business which is characterized by arms length transactions between separate parties in which each party is free to negotiate and to determine the nature, and cost of such work.
>
> In light of the fact that the claimant was not engaged in a trade or business, it must be concluded that the claimant did not have income for the purposes of quarters of coverage in any period between 1979 and 1982. Therefore, the claimant must be considered to have less than the required 30 quarters of cover-

age in order to be entitled to retirement insurance benefits.

Since the claimant has received $1308 in retirement insurance benefits [to] which he is not entitled, it must be concluded that this was an actual overpayment of benefits.

(Tr. 20).

The ALJ then made the following relevant findings:

1. Based on the above findings, the claimant was not entitled to benefits beginning with the month of April 1983.

2. The claimant was overpaid benefits.

3. The claimant was without fault in causing the overpayment (20 C.F.R. 404.-507).

4. Refund of the overpayment would not defeat the purposes of Title II of the Social Security Act (20 C.F.R. 404.508).

5. Refund of the overpayment would not be against equity and good conscience (20 C.F.R. 404.509).

6. Recovery of the overpayment is not waived (20 C.F.R. 404.506).

(Tr. 21).

## IV. DISCUSSION

### A. Standard of Review.

■ Title 42, section 405(g) of the United States Code provides the basis for this Court's jurisdiction and establishes the limitations upon its review. A decision of the Secretary concerning retirement insurance benefits must be upheld if an examination of the record reveals substantial evidence supporting the Secretary's decision. *Id.* Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir.1981). The fact that the record contains evidence which would support a different conclusion does not undermine the Secretary's decision so long as

there is substantial support for the decision in the record. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir.1972). Thus, it is the sole task of this Court to determine whether the record, when read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusion reached by the Secretary; and where the evidence is susceptible of more than one rational interpretation, it is the Secretary's conclusion which must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.1982).

### B. Applicable Law.

Pursuant to section 202(a) of the Act, 42 U.S.C. § 402(a), an individual who is fully insured as defined by section 214(a) of the Act, 42 U.S.C. § 414(a), who has attained age 62, and who has filed an application should be entitled to benefits. In the case of an individual who has attained retirement age, as defined in section 216(*l*), 42 U.S.C. § 416(*l*), entitlement begins in the first month in which all of the aforementioned criteria are met.

Section 214(a) of the Act, 42 U.S.C. § 414(a)(1), defines a "fully insured individual" as any person "who ha[s] not less than ... one quarter of coverage (whenever acquired) for each calendar year elapsing after 1950 ... and before the year in which he or she has attained age 62...." Section 213(a) of the Act, 42 U.S.C. § 413(a), defines the term "quarter" as "a period of three calendar months ending on March 31, June 30, September 30, or December 31." Section 213(d) of the Act, 42 U.S.C. § 413(d), "provides that a 'quarter of coverage', for calendar year 1978 and subsequent calendar years, is a calendar quarter in which an [sic] residual has been credited at least $250 in 1978, $260 in 1979; $290 in 1980; $310 in 1981; $340 in 1982, and $370 in 1983." Defendant's Brief at 5.

The Secretary found that because Woodworth's partnership activities between 1979 and 1982 did not constitute self-employment resulting in self-employment income, he did not have sufficient quarters of coverage for entitlement to benefits and therefore received an overpayment of benefits. Woodworth urges this Court to reverse the

Secretary's determination because the only logical conclusion based on the record is that he was either self-employed or an employee of the partnership.

### C. Analysis.

In order for Woodworth to be eligible to receive benefits, he must show that he was self-employed and that the income he derived therefrom could be counted for purposes of the Act, i.e., that the income was self-employment income and not investment income. I will address each factor in turn.

#### 1. *Self-employment.*

The first step of the analysis is to determine whether Woodworth was self-employed. On this issue, Woodworth argues that the factors listed under 20 C.F.R. § 404.1007(c),[3] indicating the existence of self-employment were present in his employment activities with the partnership. Specifically, Woodworth contends that: 1) he entered into the repair business with the intention of earning a profit; 2) the profit was to the exclusion of his partner; 3) he could have suffered a loss and he then would have had a deduction from his personal income rather than from the partnership income; 4) he would have been individually liable to anyone who suffered a personal injury by any negligent work performed by him; 5) if he failed to complete his activities his partner could have brought suit against him; 6) although he only received monetary remuneration from the partnership, he did not refuse work offered to him by other parties; 7) he did not conduct an advertising campaign, but he did make himself available to the general public; and, 8) although his work place was at the apartment buildings owned by the partnership, the expense of owning the necessary equipment, transportation to and

from the workplace, and small expendable items were borne by him individually.

Second, Woodworth argues that, in his status as a self-employed individual, he can arrange his finances in a way which will place him within the entitlement provisions of the Act, so long as the business transactions are bona fide and real. Woodworth asserts that he formed a business, which followed normal operating procedures for that type of business, and thus the Court should not ignore the form of business in which the plaintiff placed his interest.

In response, the Secretary contends that, even assuming that Woodworth's repair work was undertaken in order to earn a profit, Woodworth was not engaged in a trade or business because he never held himself out as selling his repair services, for profit to others, i.e., third parties. The Secretary also argues that Woodworth never advertised his services, and that while Woodworth contends that he made himself available to the general public, there is no substantiation of this anywhere in the record. Furthermore, the Secretary points out that the ALJ found that Woodworth himself determined his salary, that there were no cash transactions, and that he alone determined what services he would perform.

Section 404.1065 provides that "[f]or an individual to have self-employment coverage under social security, the individual must be engaged in a trade or business and have net earnings from self-employment that can be counted as self-employment income for social security purposes." 20 C.F.R. § 404.1065. A person can carry on a trade or business as an individual or as a member of a partnership. "With some exceptions, the term 'trade or business' has the same meaning as it does when used in section 162 of the [Internal Revenue]

---

**3.** 20 C.F.R. § 404.1007(c) sets forth the following indicators of self-employment:

(1) a self-employed individual has the potential to earn a profit or suffer a loss;

(2) a self-employed individual is usually hired for a certain job and is liable for damages if he fails to complete that work;

(3) a self-employed individual usually works for a number of persons or firms at the same time;

(4) a self-employed individual advertises to the general public that he is available to perform services; and,

(5) a self-employed individual pays his own expenses and has his own equipment and work place.

Code." 20 C.F.R. § 404.1066. However, the phrase is nowhere defined in the Internal Revenue Code or in the Treasury Regulations, thus it has been left to the courts to determine what constitutes a "trade or business" for purposes of both the IRC and the Act.

The United States Court of Appeals for the Third Circuit in *McDowell v. Ribicoff*, 292 F.2d 174 (3d Cir.), *cert. denied*, 368 U.S. 919, 82 S.Ct. 240, 7 L.Ed.2d 135 (1961), defined "trade or business" as it was to be used in the Third Circuit courts. The Third Circuit set forth the test to be applied in determining whether a taxpayer's activities constitute a "trade or business," and noted that an examination of the facts in each case is necessary:

> [I]t is generally agreed that to constitute a trade or business an activity must be initiated and carried on with the good faith intention of making a profit.... " '[C]arrying on a trade or business', within the contemplation of [section 162] involves holding one's self out to others as engaged in the selling of goods or services."

*McDowell*, 292 F.2d at 177 (citations omitted) (citing *Deputy v. DuPont*, 308 U.S. 488, 499, 60 S.Ct. 363, 369, 84 L.Ed. 416 (1940)). The court continued:

> The phrase "trade or business" connotes something more than an act or course of activity engaged in for profit.... "[T]rade or business" must refer not merely to Acts engaged in for profit, but to extensive activity over a substantial period of time during which the Taxpayer holds himself out as selling goods or services.

*Id.* at 178; *see also Noto v. United States*, 598 F.Supp. 440 (D.N.J.1984), *aff'd*, 770 F.2d 1073 (3d Cir.1985). Though the phrase "trade or business" as defined by the Third Circuit requires a claimant to hold himself out to others as engaged in the selling of goods or services, it does not specifically require that the holding out be to more than one customer. *Gajewski v. Commissioner of Internal Revenue*, 723 F.2d 1062, 1066 (2d Cir.1983), *cert. denied*, 469 U.S. 818, 105 S.Ct. 88, 83 L.Ed.2d 35 (1984) (it is sufficient that the self-employed individual offers goods and services to only one customer); *accord Steffens v. Commissioner of Internal Revenue*, 707 F.2d 478, 482 (11th Cir.1983).

Although Woodworth testified that he did not advertise and that the partnership was his only source of profit-oriented income, he also testified that he held himself out to the general public, and this Court finds this testimony to be substantiated by the fact that Woodworth provided services to his neighbors in return for dinner invitations. Indeed, under 20 C.F.R. § 404.1041, it is unimportant how remuneration is given for employment, thus the dinner invitations could be considered wages within the meaning of section 404.1041 and counted toward self-employment status.

*McDowell* sets forth that, in order for it to be considered a trade or business, an activity must be initiated and carried on with the good faith intention of making a profit. 292 F.2d at 175. Woodworth testified that he entered into the handyman business in order to make profit and this testimony has not been contradicted. Therefore, this Court finds that Woodworth's business was indeed set up in a good faith effort to earn a profit. In addition, as the court in *Brannon v. Ribicoff*, 200 F.Supp. 697, 703 (D.Mont.1961), noted: "It is well settled that there is nothing improper or questionable about a person entering into bona fide employment for the express purpose of acquiring a wage record which will enable him to qualify for old-age insurance benefits. Nor does such motivation in organizing a corporation defeat recovery." *See also Letz v. Weinberger*, 401 F.Supp. 598, 603 (D.Colo.1975). Thus, the claimant in this case could have set up his business for the express purpose of acquiring benefits, however because the record shows that the employment entered into was bona fide and that the claimant actually performed substantial services and kept accurate records, this Court need not examine the claimant's motives.

*McDowell* also requires that for a person to be considered engaging in a trade or business, the activity must be extensive in

nature and carried out over a substantial period of time during which he holds himself out as selling goods or services. In this case, the record reveals that Woodworth engaged in his handyman business from 1979 until 1982, and that during this time he performed such activities as plumbing, electrical work and carpentry, which are substantial according to 20 C.F.R. § 404.1082(d)(2)(ii), and were not merely activities, such as sweeping and washing windows, which are included under rental income.

In addition, the Secretary found that Woodworth determined what projects should be completed and stated this was evidence that he was not self-employed. This conclusion is not supported by substantial evidence, and even assuming that it is, it does not negate Woodworth's self-employed status. When an individual is hired as an independent contractor in the category of general handyman, he is given a generalized list of duties he is to perform and not a specific list of what to perform. The record itself evidences this setup:

Q. How did you decide what jobs you would do?

A. I would do all the jobs that I was physically able to do among the category of handyman jobs, based on the partnership. If the partnership felt like I could not do it, then we'd get somebody else to do it.

Q. So then it was the partnership that decided what jobs you had done?

A. That's right.

(Tr. 44). This testimony suggests that Woodworth was engaged in the general maintenance of the apartment buildings and that if a job arose that he was unable to perform, the partnership and not Woodworth would make a determination as to what action was to be taken. The partnership's control over Woodworth's handyman activities is also evidenced by Woodworth's testimony that some repairs were above and beyond his abilities and that the part-

nership hired a third party to install a new fire escape (Tr. 43). The record also reveals that Woodworth supplied his own tools and paid his own incidental expenses. Thus, I am unwilling to accept the Secretary's determination that because he was left to determine for himself what jobs he would perform, Woodworth was not engaged in self-employment.[4]

Based on the foregoing, I am of the opinion that Woodworth's activity was a regular occupation, conducted on a regular and continuous basis, was performed with a profit motive, and was available to at least a limited portion of the general public, and therefore that he was self-employed within the meaning of the Act.

### 2. *Self-employment Income.*

The second part of the analysis is to determine whether Woodworth did in fact receive self-employment income. With respect to this factor, Woodworth urges that the Secretary's finding that he was not self-employed and did not receive self-employment income because he received no actual tender of cash for his services, but instead allowed his fee of $12.00 per hour to be credited towards his investment in the partnership, was erroneous. Woodworth bases this argument on 20 C.F.R. § 404.1041(b), which states: "If [one is] paid wages, it is not important what they are called," and section 404.1041(c), which states: "The way in which [one is] paid is unimportant ... wages may be paid on an hourly, daily, weekly, monthly, or yearly basis."

Woodworth also points to 20 C.F.R. § 404.1042(b), which states that "[w]ages are constructively paid when they are credited to the account of, or set aside for, an employee so that they may be drawn upon by the employee at any time although not then actually received." Woodworth contends that because an accurate and detailed accounting, both of the partnership and of

---

**4.** Furthermore, the Secretary's argument that Woodworth was not self-employed because he stated his occupation on his income tax return as "real estate investor" and failed to mention his handyman status is without merit because Woodworth submitted all other requisite self-employment forms in proper fashion. This Court will not elevate the Woodworth's title over the substance of his duties.

his repair business, were kept and since there is no reason to doubt the validity of these records, this Court should recognize the crediting of his repair work to his contribution to the partnership as self-employment income. Woodworth notes that in *Enke v. Ribicoff,* 197 F.Supp. 319 (S.D.Fla. 1961), the issuance of notes by an insolvent corporation was considered payment. Thus, Woodworth asks this Court to hold that the crediting of monies toward investment in the partnership should be considered payment to him individually as self-employment income.

Section 211(a) of the Act, 42 U.S.C. § 411(a), defines income from self-employment as that income computed "under subtitle A of Title 26 [the Internal Revenue Code], derived by an individual from any trade or business carried on by such individual...." The Secretary found that Woodworth did not receive self-employment income; however, not only is there no substantial evidence in the record to support this conclusion, but, in fact, the evidence in the record is overwhelmingly to the contrary. Particularly notable are the accurate records the partnership kept of Woodworth's maintenance activities and the deduction of his earnings from the $200.00 monthly repair fund contribution each partner was required to make.

Also, the Secretary found that Woodworth himself determined how much he was to be paid out of the partnership monies and that this was evidence that he did not receive self-employment income. This Court finds nothing in the record to support this conclusion. Woodworth was a member of a partnership and it is inconceivable that he alone determined his salary without the consent of his partner. In addition, assuming arguendo that he was a non-affiliated third party, Woodworth by hiring himself out to the partnership as a handyman could still have independently determined his salary; however, in order for him to be hired the partnership would still have to accept his salary demand. Thus, he could not possibly have determined by himself what he would be paid, because both partners under the partnership agreement would have to agree to the salary demand before the plaintiff could undertake his duties. Even if he did, this Court has found nothing that would disqualify him from consideration as an individual receiving self-employment income under the Act, as a result.

In addition, the ALJ reasoned that Woodworth did not receive self-employment income because his receipt of payment was merely a paper transaction since no cash ever changed hands. As stated previously, 20 C.F.R. §§ 404.1041(c) and 404.1041(d) provide that wages can be in any form and the way in which one is paid is unimportant. "Wages may be paid on the basis of piecework or a percentage of the profits ... [or] on an hourly, daily, weekly, monthly, or yearly basis." 20 C.F.R. § 404.1041(c). In this instance, Woodworth never received a check for the amount of money he earned, however, the record shows that accurate records were kept and that Woodworth's earnings were deducted from the amount he owed to the repair fund and also credited to his share in the equity of the partnership. This practice is perfectly legitimate and this Court will consider Woodworth's method of receiving his earnings as self-employment income within the meaning of the Act.

3. *Self-employment Income v. Investment (Rental) Income.*

The final step in the analysis is to determine whether Woodworth's maintenance income should be separated from his rental income. With respect to this factor, Woodworth argues that, as a general rule, when an individual contributes his labor to an enterprise the money that he earns is considered either wages or self-employment income as opposed to investment income. Woodworth cites to cases which have held that it is the contribution of substantial labor and income that form the criteria by which a self-employment claimant's eligibility for benefits is determined. Woodworth avers that his maintenance work went well beyond the insubstantial services listed in 20 C.F.R. § 404.1082(d)(2)(ii) and therefore constituted self-employment income. He also argues that section 404.1082(e) sug-

gests that a claimant may distinguish between the income derived from the rental of apartments and the income derived through performance of repairs.

Section 211(a) of the Act, 42 U.S.C. § 411(a), states that "[t]he term 'net earnings from self-employment' means the gross income ... derived by an individual from any trade or business carried on by such individual ... except that in computing such gross income ... (1) There shall be excluded rentals from real estate...." Section 404.1082(d)(2)(ii) states:

> [W]e consider services to be provided to the occupant if they are primarily for the occupants convenience and are other than those usually provided in connection with the rental of rooms or other space for occupancy only.... However, we do not consider the furnishing of heat and light, the cleaning of public entrances, exits, stairways and lobbies and the collection of trash, as services provided to the occupant.

20 C.F.R. § 404.1082(d)(2)(ii). Furthermore, section 404.1082(e) provides: "If an individual or a partnership is engaged in a trade or business other than real estate, and part of the income is rentals from real estate, only that part of the income which is not rentals and the expenses attributable to that portion are included in determining net earnings from self-employment." 20 C.F.R. § 404.1082(e).

■ In *Delno v. Celebrezze*, 347 F.2d 159 (9th Cir.1965), the Ninth Circuit found that labor identified as substantial services was the deciding factor in differentiating between rental income and self-employment income. Any service not clearly required to maintain the property in condition for occupancy will be considered work performed for the tenant and not for the conservation of capital investment. Additionally, the Third Circuit in *Maloney v. Celebrezze*, 337 F.2d 231 (3d Cir.1964), held that certain additional services were clearly of the type usually and customarily furnished in connection with the efficient operation of a modern office building.[5] "These services were not such as to change the essential character of the appellant's income as 'rentals from real estate' " within section 211(a)(1) of the Act, which excludes from the term "net earnings from self-employment" rentals from real estate. *Maloney*, 337 F.2d at 233.

■ I find that the income Woodworth derived from his maintenance services is not to be considered rental income, which would be excluded from being considered as "self-employment" income and therefore would not be applied against the establishment of any quarter of coverage under the Act. Woodworth's situation can be reconciled with the above cases for several reasons.

First, Woodworth kept separate records of the rental income derived on behalf of the partnership and the maintenance income he himself earned. Unlike the claimants in the cases cited above, the claimant here is not seeking to distinguish the amount of money he received for the performance of services from that received through rentals. These two types of income have been kept separate from day one of the agreement and this Court believes they should remain separate.

Second, I agree that it would be unfair to deem Woodworth's earnings "rental income." If the partnership had hired a third-party, independent contractor, the contractor's earnings would not be considered as rental income. Consequently, this Court cannot deny Woodworth his status as a self-employed individual receiving self-employment income solely because he also happened to own an interest in the partnership that employed him. To do so would be to discriminate against him due to his status as partner.

Third, Woodworth's services were substantial and far exceeded the list of services that are considered a basic requirement of a landlord when earning rental income. Woodworth replaced stairs, installed smoke alarms, and did electrical, plumbing and

---

5. These services included: janitorial work; work within the offices; installation and servicing of water coolers and air conditioning equipment; installation, alteration and repair of lighting fixtures and related equipment; and elevator service.

carpentry jobs. These services, if not undertaken by the him, would had to have been performed by a third party, and the partnership would have had to pay the bill. Thus, Woodworth's services cannot be characterized as basic services provided by a landlord when earning rental income. Also, Woodworth contributed his labor to the enterprise, and as pointed out in *Delno, supra,* labor is an important factor when determining self-employment income, especially when the services provided were not clearly required to maintain the premises in condition for occupancy.

In addition, while Woodworth profited directly from these services, his partner received no additional income therefrom. These services, then, cannot be classified as part of the rental income since one partner did not share in additional income from these services, and as the partnership itself covered the cost of these services and these costs were not included in the rent. Also, the record reveals that the partnership profits were to be divided equally; therefore, including the maintenance income in Woodworth's share of the rental income but not to the other partner's share would not be in accordance with the partnership agreement, and this Court is loath to interfere with the corporate relationship.[6]

## V. CONCLUSION

Based on the foregoing, I find that the Secretary's decision is not supported by substantial evidence. Accordingly, the Secretary's decision shall be reversed, the quarters of coverage previously excluded shall be reinstated, and benefits shall be awarded to Woodworth retroactively. The Court will enter an order consistent with this Opinion.

---

**6.** In light of the holding above, the Court need not reach Woodworth's other arguments.