**Marley H. PERKINS, Plaintiff,**

v.

**Arthur S. FLEMMING as Secretary of the United States Department of Health, Education and Welfare, Defendant.**

**Civ. No. 306–60 T.**

United States District Court
S. D. California,
Central Division.

Feb. 13, 1961.

---

Frances O. Drummond, Los Angeles, Cal., for plaintiff.

Laughlin E. Waters, U. S. Atty. for Southern Dist. of California, by Richard A. Lavine, Asst. U. S. Atty., Chief, Civil Division, and Ralph F. Bagley, Jr., Asst. U. S. Atty., Los Angeles, Cal., for defendant Arthur S. Flemming as Secretary of the United States Department of Health, Education and Welfare.

TOLIN, District Judge.

Plaintiff brought this action under Section 205(g) of the Social Security Act, as amended, 42 U.S.C.A. § 405(g) to review a "final decision" of the Secretary of Health, Education and Welfare. Plaintiff was not successful in his initial proceedings before the Bureau of Old-Age and Survivors Insurance. The determination of the Bureau was made upon its consideration of the documents filed with it by plaintiff.

Following an adverse summary determination, he requested a hearing and, in accordance with prescribed procedure [1],

a hearing was held before a Referee. It was conducted May 11, 1959, at plaintiff's home.

This was the first and only time that plaintiff was seen by any fact finder serving in the administrative process by which claims such as plaintiff's are administratively determined. For the first time oral evidence was received. All the documentary matter which had been presented to the Bureau for its office determination was before the Referee. That official also had the benefit of viewing plaintiff, receiving his oral testimony and questioning him, and one additional witness produced by plaintiff. Additional exhibits were received.

The Referee found that plaintiff in fact had been disabled from engaging in substantial gainful activity, that his impairment had its onset in March 1946 and has continued to the dates of filing his applications, and that his condition is expected to be of long continued and indefinite duration.

The Referee concluded that plaintiff is entitled to the establishment of a period of disability effective March 1946 to disability insurance benefits effective July 1957. Upon these findings and that conclusion the Referee reversed the decisions of the Bureau of Old-Age and Survivors Insurance which had disallowed plaintiff's written applications.

The Referee's Decision summarized the evidence in what this Court accepts as Findings of Fact:

"In his application appellant alleged he was born October 28, 1901 and that he has had an eighth grade education. He showed employment from 1943 to 1946 in the bottling departments of various dairies and soft drink plants, and he indicated he had also had experience in farming. He stated he became unable to work March 2, 1946 and listed the nature of his illness as 'right leg amputated; chronic bronchitis; sinus trouble.'

"Medical evidence of record consists of various reports from the Veterans Ad-

1. Request for a hearing by application to the Bureau, a Referee, or to the Appeals Council [20 C.F.R. § 403.709(a) and (e)].

ministration from 1946 through 1956; report from H. Baer, M.D., dated October 22, 1957; and a report from T. R. Comstock, M.D., dated February 19, 1958.

"On March 2, 1946 appellant, while riding a motorcycle, was struck by an automobile, resulting in a compound, comminuted fracture of the right leg. After the wounds healed the fracture was plated. Subsequently, he developed osteomyelitis which was saucerized in July and September 1946. Later reports record the amputation of the right leg six inches below the knee in 1952 and indicate difficulty in getting used to the prosthetic appliance. Report of an examination in 1955 reveals a history of alcoholic intoxication resulting in acute episodes of brain syndrome and that appellant had developed a neurosis as a result of the leg injury. At that time there was found on the stump surface of the skin a small superficial ulceration with indurated base and some erythema. There were no other abnormalities of bones or joints and no limitation of motion was found. Appellant was also treated for post-nasal drip and cough.

"A report of an examination in October 1957 by a private physician discloses appellant has chronic bronchitis with scattered rales and irritative cough; inguinal hernia on both sides since 1955. An examination February 19, 1958 by a private physician states appellant's right leg missing six inches below the knee; stump was in quite good condition; there was 25 to 35 per cent atrophy of the muscle of the right thigh; also a right inguinal hernia. The last examination of record was April 14, 1959, the report of which furnished the same medical data.

"Appellant testified that he had never done sedentary work, and had done no work since his accident in March 1956, except for three months when he tried to wash dishes; that for six years his right leg was in a cast while the doctors were trying to save it; that in July 1952 it was amputated; since then he has used a crutch or a cane; that he has not driven a car since 1946 although he has a driver's license limited to the operating of automobiles equipped with hand-controlled brake and throttle; that he first got an artificial leg in 1953; that his left hip has pained him since bone was taken from it to graft onto his right leg; that he has a sore on the stump of his right leg; that he must stop to rest six times in a block; that he has developed a double hernia as a result of his injuries to his right leg and his painful left hip; that he wears a truss; that no decision has been made as to surgery for the herniae; that from March 1946 until 1952 he was in the hospital and domiciliary almost half the time; that he underwent ten major operations on his leg, including the graft, in efforts to save it; that it was kept in a cast for several months following each surgery; that until eighteen months prior to the hearing appellant had been in the domiciliary; that while there he was always in bed in the afternoon between one o'clock and three o'clock; that he had less than ninety days' military service and consequently is not eligible for Veterans Administration benefits; that he has done no drinking for two years, but drank previously; that he tried unsuccessfully to learn watchmaking at Rancho Los Amigos before his amputation; that he was told nothing could be done for him by way of vocational rehabilitation.

"Appellant's father testified appellant is almost helpless; that his leg gives way; that in the night he cries out if his legs get in a certain position; that his herniae resulted from his legs giving way; that he takes his prosthesis off and lies down two or three times a day; that appellant thought he could work a couple of hours a day and tried dishwashing; that he had to work four hours after awhile and he could not stand on his leg four hours a day."

An Appeals Council exists in the Social Security scheme.[2] Unlike Appellate

2. 20 C.F.R. § 403.710.

Courts which take only the cases of appellants, the Appeals Council, upon its own motion, has power to review the decision of a Referee.[3] It exercised that power in this case.

The record of the Appeals Council's proceedings appear in this Court's record only from its Decision and a notice to plaintiff that it had decided to review the Referee's Decision. The notice indicated that the Decision would be based upon the records unless additional evidence be accepted. Plaintiff was informed of his right to file a brief or other written statement and even to appear before the Council. He did file a statement and notified the Council that he would not travel from Sawtelle, California to Washington, D. C.[4] to attend the review of the case by the Appeals Council. No new evidence was presented, although under applicable rules the Appeals Council may receive, and the applicant may introduce, new evidence.

From the decision of the Appeals Council, it appears that a de novo evaluation of the evidence already in the record was made.[5]

---

3. 20 C.F.R. § 403.709(m).

4. The place set for hearing

5. "This case is before the Appeals Council on its own motion for review of the decision of the referee dated July 31, 1959. The referee held that the claimant was entitled to a period of disability beginning March 1946 and to the disability insurance benefits for which he had applied. The claimant was notified of his rights in the matter and the Appeals Council has given careful consideration to his contentions.

"The issue to be determined is whether the claimant's impairment was severe enough to make him continuously unable to do any kind of substantial gainful activity starting from the time alleged or at any other time prior to filing his disability applications and while he met the statutory earnings requirements of the Social Security Act, as amended, applicable to his claims.

"The decision of the referee sets forth the pertinent provisions of the Social Security Act, and restatement herein is deemed unnecessary. Except as may appear herein, the referee's statement as to the evidentiary facts is herewith incorporated by reference and made a part hereof. The Appeals Council, however, does not adopt any of the inferences, findings, or conclusions of the referee based upon such evidentiary facts.

"The claimant, whose stated date of birth is October 28, 1901, reported on his disability application, filed June 11, 1955, that he had completed the eighth grade of elementary school, and that, on March 2, 1946, he was involved in an accident, since which time he had not worked. On December 9, 1957, he filed an application for monthly disability insurance benefits.

"The record establishes that the claimant fractured his right leg on March 2, 1946, and subsequently developed osteomyelitis which required him to be hospitalized on several occasions for treatment until his right leg was amputated about 6 inches below the knee in July 1952. He was fitted with a prosthesis and although he alleges that he is unable to walk for more than a block, without resting, because of weakness of the right leg, there is no indication that the prosthesis is unsatisfactory. The claimant complains of pain and stiffness of the left hip which appears to be due to the removal of some bone from the left ilium for grafting in the right tibia. However, this is a common donor site for bone and is usually accomplished without causing any disability.

"Other complaints of the claimant were chronic bronchitis and sinus trouble; however, the evidence does not indicate that these are significant impairments as the claimant's pulmonary function is not shown to be seriously reduced. The evidence shows the claimant has been a chronic alcoholic, and he had considerable difficulty with this problem from approximately 1946 to 1957. However, there is no indication of a psychiatric disorder resulting from alcoholism. It is noted that Dr. Baer in his report of October 22, 1957, stated that the numerous periods of hospitalization from 1946 to August 1957 have 'had a profound psychological effect on him and it is doubtful if he will ever recover from it.' Even so, there is no indication of disturbances in thinking, emotion, conduct or behavior to show a serious functional condition. Dr. Baer further stated in his report that the artificial leg is fairly well fitted but that the claimant has never learned to handle it well and so is not able to stand on it for any

The Court is confronted here with considering the difficult situation wherein the Referee and the Appeals Council have reached different results from the same evidence. The standard by which this Court must judge the decision of the Appeals Council is set forth in the Social Security Act itself which provides that "(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." [6]

The Supreme Court has instructed that this test is used even when the Referee and the Appeals Council disagree, but that greater weight may be given to the Referee's findings of fact when he has "observed the witnesses and lived with the case." [7] However, this does not mean that the Referee's findings are to be judged by the "clearly erroneous" rule.[8]

In other words, where the credibility of witnesses is crucial in evaluating the evidence, the Referee's findings of fact must be given greater weight in light of the

length of time. Although the evidence shows there was a small ulcer on the stump in 1955, Dr. Baer does not refer to any ulcer being present in 1957 and Dr. Comstock, in his report of April 14, 1959, shows that 'the stump is in quite good condition.'

"The evidence clearly shows that the claimant does have a handicap with the partial loss of one extremity and his difficulty apparently stems from not learning to use his prosthesis properly, which could be improved with proper instructions and would enable him to walk and move around without discomfort. Although he may have some discomfort due to pain in the left hip, the medical evidence does not indicate that this is due to any organic or degenerative process. The loss of use of one extremity is not sufficient on which to base a favorable finding, especially in the absence of medical evidence to show that the claimant's inability to use the prosthesis is due to vascular or neurological complications. It is noted that the referee's decision refers to the claimant as being 'illiterate'; however, the claimant must be able to read and write as he reported on his application that he completed the eighth grade of elementary school and, in addition to signing his ap-

case as a whole when a reviewing court determines whether an administrative body's findings are supported by substantial evidence. However, the Referee's findings are not "binding" upon the Appeals Council. This principle was perhaps best expressed in Judge Frank's concurring opinion in the second appeal of the Universal Camera case after it was remanded by the Supreme Court:

"An examiner's finding binds the Board only to the extent that it is a 'testimonial inference', or 'primary inference', i. e., an inference that a fact to which a witness orally testified is an actual fact because that witness so testified and because observation of the witness induces a belief in that testimony. The Board, however, is not bound by the examiner's 'secondary inferences', or 'derivative inferences', i. e., facts to which no witness orally testified but which the examiner inferred from facts orally testified by witnesses whom the examiner believed." [9]

plication, has written several letters (which appear to be in the same handwriting) concerning his claim. Further, an individual with an eighth-grade education certainly could not be classified as illiterate.

"The Appeals Council finds, on consideration of all the evidence, that the claimant's impairments may have prevented him from working for temporary periods but they have not remained severe enough to make him continuously unable to engage in any substantial gainful activity from a time on or before June 30, 1947, when the earnings requirements were last met, and continuing up to December 9, 1957, the date of filing his latest disability application."

6. 42 U.S.C.A. § 405(g).

7. Universal Camera Corp. v. N. L. R. B., 1951, 340 U.S. 474, 496, 71 S.Ct. 456, 469, 95 L.Ed. 456.

8. F. C. C. v. Allentown Broadcasting Corp., 1955, 349 U.S. 358, 364, 75 S. Ct. 855, 99 L.Ed. 1147.

9. N. L. R. B. v. Universal Camera Corp., 2 Cir., 1951, 190 F.2d 429, 432.

■ Viewing the decision of the Appeals Council on the whole record, it appears that its findings are not supported by "substantial evidence". In order to find as it did, the Council in effect discounted the credibility of witnesses it did not see and hear, without any evidence in the record to show why this testimony should not be believed. Moreover, the Council disregarded the uncontradicted medical reports in the record which indicated that plaintiff was permanently disabled.

The only support in the record for the Appeals Council's decision were the Council's general statements about medical disabilities which, even if generally true, are not precise enough to refute the specific evidence offered by plaintiff and found to be credible by the Referee.

The Referee's Decision, after finding the facts,[10] correctly states and discusses the rule to be applied to the only legal issues raised by the Bureau, as follows:

"An impairment, to be disabling within the meaning of the Social Security Act, as amended, must be of such severity as to prevent substantial gainful employment of any kind. It must be established by medical evidence that the impairment results in such lack of ability to perform significant functions—such as moving about, handling objects, hearing or speaking—that one cannot, with his training, education, and work experience, engage in any kind of substantial gainful activity. * * *

" 'Sections 416(d) (216) (i) and 423 (223) are substantially identical, and a claim is established under those sections only by showing that the plaintiff has a medically determinable physical or mental impairment of such a nature that it can be expected to result in death or a disability of long-continued and indefinite duration which prevents the plaintiff from engaging in any substantial gainful activity. The burden of proof is upon the plaintiff to prove these conditions.' (See James E. Butler v. Folsom, U. S. Dist. Court, W. Dist. of Arkansas, Harrison Div., Civil No. 435, 11/20/58, 1A CCH U.I.R.Fed. Para. 8465 [167 F.Supp. 684], citing Fuller v. Folsom, 155 F.Supp 348 (DCWD Ark 1957)).

" 'The Social Security Act, Title 42, U.S.C.A., Secs. 416(i) and 423(c) (2), requires that any disability claimed arise from "medically determinable physical or mental impairment," and that it prevent the claimant of such disability from engaging in "any substantial gainful activity." The fact that this plaintiff is illiterate and of severely limited training and experience would not itself be a physical impairment justifying a finding of disability. But The Act is not concerned with a standard man of ordinary and customary abilities, but with the particular person who may claim its benefits and the effect of the impairment upon that person, with whatever abilities or inabilities he has. Thus plaintiff's impairments would not prevent him from teaching courses in law, but the provisions of the Act would be utterly futile if "any substantial gainful activity" means activity utterly beyond the capacity of the particular person involved. "Any substantial gainful activity" is such activity for which the [particular] claimant is reasonably qualified by education, training, or skill. Compare cases relating to "total disability" under War Risk and National Service Life Insurance. Berry v. United States, 312 U.S. 450 [61 S.Ct. 637, 85 L.Ed. 945] (1941); and see Bostick v. Folsom, 157 F.Supp. 108 at p. 118 (D.C. W.D. Ark 1957) and cases there cited. Thus, if a medically determinable physical impairment exists, the court should consider whether such impairment prevents the particular plaintiff from engaging in any substantial gainful activity for which he is qualified, and to that end may consider his education, training, and experience, as well as the nature and extent

10. Despite a tendency toward informality and semantic imperfection, the Court treats the heretofore quoted portion of the Decision as Findings of Fact.

of the impairment itself.' (See Charlie P. Dunn v. Folsom, U. S. District Court, W. Dist. of Arkansas, Hot Springs Div. Civil No. 755, 10/10/58—1A CCH U.I.R. 8448 [166 F.Supp. 44].)

"If an impairment or impairments result in inability to perform significant functions—such as moving about—that one cannot, with his training, education and work experience, engage in any kind of substantial gainful activity, he is considered disabled (Sec. 404.1501 Regulations 4, 20 C.F.R. 404.1501). If physical conditions in fact prevent one from engaging in any substantial gainful activity they are [nonetheless] disabling even though most injuries of the type suffered do not prevent working.

"The facts in this case are undisputed that for six years following appellant's accident, he tried to save his leg by various procedures short of amputation; they necessitated repeated hospitalizations while his leg was in a cast; although, at least in retrospect, it might have been better had amputation been undertaken sooner than six years, appellant cannot be blamed for deferring this drastic surgery; he probably would have better use of his prosthesis had an earlier amputation been done; although the evidence shows appellant was not an ideal patient, his derelictions appear human considering the severity of his condition and the frustration and disappointment resulting from repeated unsuccessful attempts to effect conservative remedies. Appellant's limited use of his limbs unquestionably prevents him from holding a job requiring being on his feet for any appreciable time; his work experience and personality do not fit him for the type of sedentary work to which his physical condition relegates him; his history of alcoholism has resulted in his being passed over for vocational rehabilitation.

"The referee finds that appellant in fact has been disabled from engaging in substantial gainful activity, that his impairment had its onset in March 1946 and has continued to the dates of filing his applications; that his condition is expected to be of long continued and indefinite duration."

The Referee stated his conclusion to be:

"The referee concludes that appellant is entitled to the establishment of a period of disability effective March 1946 and to disability insurance benefits effective July 1957."

He concluded his Decision with an Order:

"The decisions of the Bureau of Old-Age and Survivors Insurance,[11] disallowing appellant's applications are:

"Reversed."

The evidence, if given by creditable witnesses, received and evaluated by a Referee who saw and heard the witnesses and observed the plaintiff, amply supports the Decision of that Referee. The Appeals Council not only attacked the credibility of the witnesses and discounted the probative value of uncontradicted medical evidence, but sought to apply a standard of human adaptability, teachability and competence to the plaintiff which the Referee found, and the record clearly indicates, he does not possess.

The Appellate Court for this Circuit has said:

"If we are to have a social security system, certainly by interpretation it should not be given a narrow construction as to those covered. Likewise, it should not be construed loosely. The apposite regulations enunciate a liberal policy."[12]

Although not the basis of the decision, it should be noted that plaintiff did not select defendant by the standards assureds apply in selecting their insurance carriers. He had no choice. He was

---

11. This agency of the Department of Health Education and Welfare also had never seen the plaintiff.

12. Folsom v. Poteet, 9 Cir., 1956, 235 F. 2d 937, 938, affirming Thorbus v. Hobby, D.C.S.D.Cal.1954, 124 F.Supp. 868.

drafted into paying a portion of his earnings. It was called a tax. In reality it was the same kind of payment holders of insurance policies call a premium.

The purpose of the law is succinctly described in the short form of its title "Social Security". To apply the standards of the Appeals Council would deny this involuntarily insured the protection he has been forced to buy. The evidence, including the only medical opinions expressed in the case, does not support the findings of the Appeals Council by "substantial evidence" but amply supports the Referee's Decision.

It is Ordered that the Decision of the Appeals Council be reversed, that the Decision of the Referee be reinstated, and that Judgment be rendered for plaintiff in accordance with this opinion.