**Lewis G. BRANNON, Plaintiff,**

**v.**

**Abraham RIBICOFF, Secretary of Health, Education and Welfare, Defendant.**

**Civ. No. 301.**

United States District Court
D. Montana,
Billings Division.

Dec. 28, 1961.

Robert E. Hendrickson, Billings, Mont., for plaintiff.

Moody Brickett, U. S. Atty., Butte, Mont., and Richmond F. Allan, Asst. U. S. Atty., Billings, Mont., for defendant.

JAMESON, District Judge.

This is an action brought under Section 205(g) of the Social Security Act, as amended, 42 U.S.C.A. § 405(g), to review a "final decision" of the Secretary of Health, Education and Welfare. Both parties have moved for summary judgment, and the case is before the court upon the pleadings, the briefs of the parties, and a certified copy of the transcript of the record.

Plaintiff, Lewis G. Brannon, who has an insured status under the Social Security Act, sought a recomputation of old-age benefits based upon wages allegedly received from Brannon Apartments, Inc. The Bureau of Old-Age and Survivors Insurance determined that he was not entitled to recomputation. At plaintiff's request a hearing was held before a hearing examiner on May 10, 1960. Plaintiff appeared personally and was represented by his attorney. The hearing examiner, on June 16, 1960, concluded that Brannon "is entitled, under the provisions of the Social Security Act, for a recomputation of his benefits on the basis of 'wages' earned from the Brannon Apartments, Inc. as an officer and president of the corporation and an active manager of the business of the corporation and the apartment owned by the corporation * * *".

The Appeals Council of the Social Security Administration upon its own motion reviewed the decision of the hearing examiner after notice and tender of an opportunity to appear to claimant. The Appeals Council reversed the hearing examiner, holding that no employer-employee relationship existed between plaintiff and Brannon Apartments, Inc., that the income received by plaintiff did not constitute "wages" from the corporation but did in fact constitute rentals from real estate, excluded from self-employment earnings under the Act, and

that plaintiff therefore was not entitled to an increase in benefits. At the request of plaintiff the Council reconsidered its decision in the light of Stark v. Flemming, 9 Cir. 1960, 283 F.2d 410 (to which reference will be made later), and rendered a supplemental decision on February 16, 1961, affirming its earlier opinion.

For many years prior to 1955 plaintiff had been engaged in the restaurant business on a full-time basis. In 1955 he and one Dan Swecker were the principal stockholders in Sportsman Cafe, Inc., a Montana corporation organized in 1951. In December, 1955, plaintiff retired from the restaurant business, and Swecker acquired all of plaintiff's stock in that corporation. Pursuant to an application dated February 27, 1956, plaintiff, on May 10, 1956, was awarded an old-age insurance benefit based upon wages reported for him by Sportsman Cafe, Inc. in the amounts of $400, $1,700, $1,271.-79 and $3,000 in the years 1952 through 1955 respectively.

On December 15, 1955, plaintiff, his wife, son and daughter organized a Montana corporation, Brannon Apartments, Inc., "to own, operate, build, rent, and lease apartments, buildings and rental buildings of all types". Each incorporator subscribed for one share of stock, and the four incorporators were named as the first directors. The first meeting of stockholders and directors was held on January 3, 1956. The minutes of the stockholders' meeting, at which all of the incorporators were present, recite the acceptance by the corporation of an offer of plaintiff and his wife, Magdalena, to transfer certain real and personal property to the corporation for the sum of $89,335, in exchange for the issuance of capital stock of equal value, the plaintiff to receive 64,667½ shares and his wife 24,667½ shares. The property transferred consisted of two adjoining apartment houses, with a total of 21

furnished apartments, which had belonged to plaintiff and his wife.[1] By-laws were adopted by the stockholders, and the directors named in the articles of incorporation were recognized as the first directors of the corporation.

At the meeting of the directors, plaintiff was elected president of the corporation, his son, vice president, and his wife, secretary-treasurer. The directors directed the issuance of stock in exchange for the property and the purchase of such record books and supplies as might be necessary for the proper administration of the affairs of the corporation.

On July 24, 1957, plaintiff filed an application for recomputation of his monthly benefit on the basis of wages received in 1956 and 1957 from Brannon Apartments, Inc.

Before the hearing examiner, plaintiff testified that he received a salary of $350 per month and his wife received $150. He stated that he managed the apartments and that he and his wife did all of the maintenance work except for that done by a girl who came to help, and certain repair jobs.

The 1956 corporation income tax return reported a net loss of $665.33 for the year and expense for "payroll" in the amount of $6,132.08. The individual income tax return filed jointly by plaintiff and his wife in 1956 shows the receipt of wages from Brannon Apartments in the sum of $6,000 ($4,200 reported by plaintiff and $1,800 by his wife).

The 1957 corporation income tax return reported a net loss of $3,015.46 and a "payroll" expense of $6,497.17, while the individual income tax return of plaintiff and his wife shows wages received from the corporation of $6,414.43 ($4,-472.47 received by plaintiff; $1,941.96 received by his wife).

The 1958 corporation income tax return reported a net loss of $2,957.49 and a "payroll" expense of $7,599.10, while

---

1. The first apartment building was acquired by plaintiff in 1916. At the time of transfer the property consisted of two apartment buildings on four lots, with a duplex in the rear—a total of 21 apartments, and was being operated by plaintiff and his wife as individuals.

on their individual tax return plaintiff and his wife reported the receipt of wages from the corporation totaling $7,375.73 ($4,200 received by plaintiff; $3,175.73 received by his wife).

No meetings of either the stockholders or directors of the corporation were held subsequent to the initial meetings on January 3, 1956. Apparently, however, all reports required by either federal or state laws were filed regularly by the corporation. James N. Janke, an accountant, testified that his firm had done accounting work for plaintiff and Brannon Apartments, Inc. since August, 1959. The firm had prepared various reports including, Federal Form 941, the employer's report of wages paid, income tax withheld; unemployment return for the State of Montana, for unemployment compensation; income tax withheld for the State of Montana; Federal Corporation Income Tax Return, Form 1120; State of Montana Corporation License Tax Return; and Annual Report of Corporations for the State of Montana. There is apparently no contention that these reports were not filed regularly prior to Janke's employment. Janke testified further that the corporate entity had accounting records, consisting of a general ledger and various journals.

The Appeals Council determined that Brannon's employment was not bona fide in that an employee-employer relationship as defined in section 210 of the Act, 42 U.S.C.A. § 410,[2] and 20 CFR 404.1004(b) and (c), did not exist between him and the corporation. The Council found that the money received by Brannon from the corporation was in reality rentals from real estate, excluded from self-employment earnings by section 211(a) (1) of the Act, 42 U.S.C.A. § 411(a) (1), and did not constitute "wages" as defined in section 209, 42 U.S.C.A. § 409.

The determination made by the Appeals Council constitutes the "final decision of the Secretary" within the contemplation of section 205(g), 42 U.S. C.A. § 405(g). In this review proceeding the findings of the Appeals Council, and not those of the hearing examiner, are conclusive if supported by substantial evidence on the record when viewed in its entirety.[3] Many cases, including some from this court, have affirmed findings of the Secretary as conclusive where supported by substantial evidence.[4] "This same finality extends to the Board's inferences and conclusions from the evidence if a substantial basis is found for them. * * * The board's decisions interpreting the Act and regulations are entitled to weight; the board's findings of fact, if supported by substantial evidence, are conclusive."[5] If a substantial basis exists for the Council's inferences here, they may not be disturbed on this review even though the court should differ from them.[6]

On the other hand, it is equally clear that it was never intended that the courts should abdicate "their 'conventional judicial function' to review";[7] and where the "administrative decision is based upon conclusions not reasonably reached upon due consideration of all the

2. Section 210(a) of the Act defines "employment" (in part) as "any service, of whatever nature, performed after 1950 * * * by an employee for the person employing him * * *." Section 210(j) defines "employee" (in part) as " * * * any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee".

3. See Julian v. Folsom, S.D.N.Y.1958, 160 F.Supp. 747; Herd v. Folsom, 7 Cir.1956, 231 F.2d 276, 278.

4. See United States v. LaLone, 9 Cir.1945, 152 F.2d 43; Poss v. Ribicoff, 2 Cir.1961, 289 F.2d 10; Paull v. Ribicoff, D.Mont. 1961, 197 F.Supp. 108; Dowell v. Folsom, D.Mont.1957, 157 F.Supp. 46; Gancher v. Hobby, D.Conn.1955, 145 F. Supp. 461; Thurston v. Hobby, W.D.Mo. 1955, 133 F.Supp. 205.

5. United States v. LaLone, supra.

6. Julian v. Folsom, supra; Dowell v. Folsom, supra.

7. See Universal Camera Corp. v. N. L. R. B., 1951, 340 U.S. 474, 490, 71 S.Ct. 456, 95 L.Ed. 456; Joki v. Flemming, D.Mont. 1960, 189 F.Supp. 365.

relevant issues presented",[8] or applies an arbitrary standard,[9] or misinterprets the provisions of the Act or regulations or misconstrues other applicable law, the court may properly reject the agency's decision.

It is my conclusion that the Appeals Council has misconstrued the applicable law as set forth in two opinions of the Court of Appeals of the Ninth Circuit, Stark v. Flemming, 1960, 283 F.2d 410, and Flemming v. Lindgren, 1960, 275 F. 2d 596.

In Stark v. Flemming a widow, over 65, formed a corporation to which she contributed all of her assets—a leased-out farm, some cash and an equity in a duplex. Later she contributed additional cash to the corporation. She became president and treasurer under an agreement that she was to receive $400 a month as compensation for her services. Her son was the corporation secretary and her daughter was vice president; neither received any remuneration. The widow was connected with the corporation for only 18 months, or exactly the six quarters required to give her an insured status under the Social Security Act. Her $400 salary would entitle her to maximum benefits under the Act, although the corporation did not earn enough during the period to pay her salary which in fact came largely from the capital which she herself had contributed. The services she performed were minimal, disproportionate to the amount of her salary, and of a kind incidental to ownership of real property. The District Court for the Northern District of California, in 181 F.Supp. 539, stated that it was within the province of the Secretary whether the widow "had in fact been an 'employee' in receipt of 'wages' from a corporation or had in fact created a mere device to disguise the actual fact of receiving rents from real estate". The District Court held the

Secretary "amply justified in disregarding the flimsy and apparent corporate device" and affirmed the latter's conclusion that the widow was not entitled to benefits.[10] However, the Court of Appeals held that the corporate entity could not be so disregarded by the Secretary, stating:

"But here there seems to have been proper adherence to the normal corporate routines. *And it is difficult to understand how the corporate arrangement would not have to be respected by others than the Secretary. And we think he must respect it, too.*

"Congress could have provided that the motivation to obtain social security by organizing a corporation would defeat the end. It did not." (Emphasis added.) 283 F.2d 410.

The court went on to hold the Secretary justified in taking exception to the amount paid to the widow for her services and remanded the case to the Secretary for an objective reappraisal of what would have been a reasonable salary.

In Flemming v. Lindgren, claimant was a small chicken farmer. His lawyer found an "old unused corporation", the stock of which was then issued to claimant and his family. The corporation carried on the chicken business and paid claimant $300 per month—an amount that would give him maximum social security benefits if paid for six quarters. When he became eligible for benefits his salary was reduced to the maximum the Act allowed for one collecting benefits. During the period the claimant was attempting to qualify for benefits, the total net income of the corporation was only $744.84. The Secretary found that amount to be what claimant's salary should have been and reduced his benefits accordingly. The district court reversed and held claimant entitled to bene-

---

8. See Jacobson v. Folsom, S.D.N.Y.1957, 158 F.Supp. 281, 284, 285.

9. Flemming v. Lindgren, 9 Cir.1960, 275 F. 2d 596, 597.

10. In its initial opinion, the Appeals Council cited the opinion of the district court in Stark v. Flemming in support of its conclusion that there was a sham employer-employee relationship.

fits on the basis of the $300 salary paid. The Court of Appeals did not agree with either position, but held that the Secretary applied an arbitrary standard in limiting its consideration to the actual earnings of the corporation. The case was remanded through the district court to the Secretary for a determination of a reasonable wage based upon all of the circumstances of the case.

The Appeals Council's conclusion that an employer-employee relationship did not exist and that the earnings were in fact rentals rather than wages is predicated upon its findings that the corporation was "created merely as a device to circumvent the provisions of the statute"; that the claimant set his own salary and that of his wife "at his own whim"; that no meetings of the corporation were held, "other than the first"; that no supervision was exercised by the corporation as required by its by-laws; and that the creation of the corporation was a "fiction designed to present an apparent employee-employer relationship" which did not in fact exist; and that the corporation accordingly was "a sham, with no plausible reason for the incorporation except to evade an important provision of the Social Security Act".

■ The corporate entity, however, may not be so summarily disregarded. As in Stark, the corporate arrangements would have to be respected by others and must be respected by the Secretary as well. Brannon Apartments, Inc. was duly and properly organized under the laws of Montana, plaintiff and his wife transferred their property to the corporation, directors and officers were regularly elected, corporate reports and tax returns were regularly filed on behalf of the corporation, and the corporation maintained accounting books and records. Business was transacted in the corporate name.

■ The Secretary argues, however, that the annual meetings of the stockholders and directors were not held and on this basis distinguishes Stark v. Flemming, supra. In strict compliance with the statutes and by-laws of the corporation, annual meetings of the stockholders and directors should have been held. The pattern followed here, however, is not unusual in family-owned corporations; and where meetings are held, they usually consist of a formal ratification of the acts of the stockholders and directors for the preceding year. In family-owned and other closed corporations, the stockholders and directors frequently carry on the corporate affairs in an informal manner, without holding formal meetings.[11] Their failure to hold such meetings does not affect the validity of the acts of officers and directors which are authorized or ratified, though informally,[12] by the remaining directors

11. This fact was clearly recognized by the examiner in his decision. It is not uncommon with family-owned corporations to dispense with the meetings until property is sold and it is necessary to record a copy of the proceedings authorizing the transfer of the property.

12. Plaintiff's son and daughter executed a statement reading in part:
   " * * * The first meeting of the stockholders and directors was held on the 3rd day of January, 1956, at Billings, Montana. Our father aforesaid was elected president, Willard T. Brannon, one of the undersigned was elected vice president, and our mother, Magdalena Brannon, was elected secretary and treasurer.
   "Since the aforesaid organization meetings we have had considerable correspondence with our father and mother pertaining to the Corporate matters. It was agreed that our father should carry on as president of the corporation and that our mother should carry on as secretary and treasurer, without any limitation as to the time which they might hold said offices. The salary which Lewis G. Brannon has received from his management of the corporation is entirely reasonable and has been received upon our specific consent and direction.
   " * * * that we have been fully aware of the salary drawn by Lewis G. Brannon from the corporation and have fully consented to his management of the property owned by the corporation since its organization." (Tr. 156–157.)

and stockholders.[13] The corporation in such cases may not be deprived of its right to exercise corporate functions by a failure to hold meetings; nor may such corporate acts be attacked collaterally.[14] In my opinion the rule followed in Stark is applicable here in spite of the failure to hold the annual meetings of stockholders and directors.

■ ■ It is well settled that there is nothing improper or questionable about a person entering bona fide employment for the express purpose of acquiring a wage record which will enable him to qualify for old-age insurance benefits. Nor does such motivation in organizing a corporation defeat recovery. Stark v. Flemming, supra. While defendant recognizes this rule, in effect he relies in part upon motivation in finding that the corporation was a sham.[15]

The hearing examiner expressly found that "although not material to this determination, the salary paid to the claimant was reasonable for the services rendered". The Appeals Council made no finding with respect to whether the salary paid was reasonable, having concluded that the employer-employee relationship did not exist. The Council attached much significance to the facts that prior to incorporation a very small amount of wages was paid to employees as compared with the amount paid subsequent to incorporation; that prior to incorporation plaintiff and his wife had full-time employment in their restaurant business, presumably looking after the apartments in their spare time, but that subsequent to retirement from the restaurant business they claimed that the operation of the apartments required their full-time services; and that the amount paid equalled approximately the net earnings of the corporation.

While it is true, as defendant contends, that rentals from real estate are excluded from self-employment earnings, it does not follow that after incorporation the corporation could not properly pay plaintiff and his wife reasonable salaries for managing and operating the apartment properties. Obviously a substantial amount of time is required in operating 21 apartments. If these services were not performed by plaintiff and his wife, it would be necessary to employ someone else to perform the same services.[16] The mere fact that the services in operating the apartments had been performed by plaintiff and his wife without compensation prior to incorporation would not prevent payment for those services subsequent to incorporation.

■ The question is, was the compensation reasonable for the services actually performed? As the court said in Lindgren, the Appeals Council "should reconstruct a reasonable wage under all

---

13. This rule is well stated in 2 Fletcher Cyclopedia Corporations, 240 § 394.1: "The doctrine of permitting closed corporations to act informally is recognized as an exception to the general rule that directors must act as a board at duly convened meetings. In fact it is well known that corporations which include only a few stockholders do not often act with as much formality as larger companies. This is especially so where the members of the board, actually and directly, personally conduct the business." See also numerous cases cited in support of this rule in 1961 Cumulative Supplement.

14. See Sun River Stock & Land Co. v. Montana Trust and Savings Bank, 1928, 81 Mont. 222, 236, 262 P. 1039.

15. The Appeals Council makes no reference to plaintiff's testimony that one purpose of the organization of the corporation was to use it as an estate planning device—a common practice in arranging for gradual transfer of interests in property. This is unimportant, however, since motivation is not an issue.

16. As the court said in Stark: "One legitimate approach would be: What would a commercial farm agency in the vicinity of the farm have charged? And what would a rental agency in the vicinity of the duplex have charged for the same service? And perhaps she might be allowed slightly more than such agencies. It is not for us to review such determinations within reasonable limits." 283 F.2d 410. So, here, the Secretary may properly consider what a rental agency would have charged for the services performed by the plaintiff.

the circumstances"; or as was said in Stark, the "Secretary is entitled to make an objective reappraisal of the salary to determine what would have been a reasonable salary * * * for the services * * * performed". It may be that the Appeals Council will find it necessary to take further testimony.

Section 205(g) provides: " * * * the court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing". The case will be remanded to the Secretary to re-evaluate the case consistent with this opinion and the views expressed by the Court of Appeals for the Ninth Circuit in Stark and Lindgren.