Joseph S. OTTESON, Plaintiff,

v.

Abraham A. RIBICOFF, Secretary of Health, Education and Welfare, Defendant.

No. 665.

United States District Court
E. D. Kentucky,
Pikeville Division.

Nov. 9, 1962.

Francis M. Burke, Pikeville, Ky., for plaintiff.

B. T. Moynahan, Jr., U. S. Atty., Moss Noble, Arthur L. Brooks, Asst. U. S. Attys., Lexington, Ky., for defendant.

SWINFORD, District Judge.

This is an action to review a decision of the Secretary of Health, Education and Welfare under section 205(g) of the Social Security Act (42 U.S.C.A. § 405 (g)). Plaintiff has pursued his claim through all of the administrative levels in the Social Security Administration and it is now the duty of this court to determine whether the decision of the Secretary is supported by substantial evidence.

In September 1958 plaintiff applied for old-age benefits. Shortly thereafter he was notified that he was not eligible because he had earnings in excess of what is permitted by the Act, 42 U.S.C.A. § 403(f). The basis for this determination was that plaintiff was chargeable with part of his wife's salary.

Plaintiff had for some sixteen years prior to 1958 been the president and active manager of the Southland Bible Institute, a nonsectarian religious school at Wolfpit Kentucky. At the time he made application for benefits and for about three years preceding, he had received $300.00 per month from the school. His wife who devoted her time and energy to the institute to the same extent as plaintiff, received no salary or other compensation. By action of the board of directors of the school in November 1958

plaintiff's salary was terminated and his wife was granted a salary of $50.00 per week.

In his application for benefits plaintiff stated that he was then working as an employee for more than $80.00 per month and that he expected his total earnings for the year to be above $2400.00. On the day following his application plaintiff wrote to the Bureau of Old-age and Survivor's Insurance stating that he had been an employee of the Southland Bible Institute since 1942 and that his wife had worked with him as dean of women, nurse, purchaser and cook. In his letter appeared the following sentence: "Our salaries have been paid to me and for convenience we have made a joint income tax return." About three weeks later, plaintiff signed a document by which he sought to revise the statements in his application relative to his earnings so that it would represent that he did not expect to make over $1200.00 in the year beginning September 1958 or to make $80.00 per month from employment during that year. There is evidence in the form of documents filed with his application that plaintiff did not intend to reduce the amount of his services to the institute.

It is the theory of the Secretary that plaintiff and his wife were being paid a joint salary up to September 1958 and that the action of the board of directors terminating plaintiff's salary is without legal consequence because it makes no difference in the attitude of the parties. A key proposition within this theory is that the salary of plaintiff's wife added to the Social Security payment with other adjustments as to room and board allowances will leave plaintiff and his wife with almost exactly the same income they had before the termination of plaintiff's salary. There is evidence that it was intended by plaintiff that the school be the beneficiary of the new arrangement.

The question here seems to be one of first impression. The parties have cited no court decisions on facts sufficiently close to these to be helpful. True, there are cases in which an applicant for benefits has attempted to assign his earnings to his wife, to continue to work as before, and to draw benefits with no real difference in his income from employment. See e. g. Poss v. Ribicoff, 2d Cir., 1961, 289 F.2d 10; and for a somewhat parallel situation see Lucas v. Earl (1930), 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731. But none of the cases involve a wife who has given fulltime service to the employer without compensation before the purported transfer from the husband of the right to receive remuneration. Another feature which distinguishes this case is that the employer here is a charitable institution and it is readily plausible that the husband has elected in good faith to continue his services to the employer without material reward. It seems therefore that the court is left to decide on its own without the guidance of precedent whether the Secretary had substantial evidence for the finding that plaintiff was in fact earning a part of his wife's salary.

On the surface anyway, the facts are that the plaintiff now draws no salary while his wife draws $50.00 per week. Before, plaintiff was paid $300.00 per month and his wife nothing. The change in the entitlement to compensation took place at about the time plaintiff applied for old-age benefits. Both plaintiff and his wife contributed time and talent to their employment to an heroic degree before the change and it may be conceded that they still do. Without more than this there is no basis for finding that plaintiff earned a portion of his wife's salary. The fact that the substitution of recipients of compensation was made for the purpose of qualifying plaintiff for Social Security is irrelevant without some evidence of a basic infirmity in the new arrangement. See Flemming v. Lindgren, 9th Cir., 1960, 275 F.2d 596. That plaintiff continued to work for the school is irrelevant too in the absence of some circumstance that would indicate that the salary of his wife was intended partly as compensation to him.

The Appeals Council of the Social Security Administration seems to rest its

decision on a finding that the money paid to plaintiff and his wife was never really in the form of a salary but living and maintenance allowances:

> "Thus it appears that the wages paid were not commensurate with actual value or the amount of services rendered by the parties, but rather were paid and received as living and maintenance grants to enable both to equally subsist. Therefore the Appeals Council finds that each shared equally in the payment of wages made to the other. P. 6, Transcript of Proceedings."

This statement embodies the major premise and conclusion of the Appeals Council decision but it seems to lack substantial import. It is the hope and expectation of every employer that the salaries he pays will provide subsistence and more to his employees and their spouses and families. The fact that the "wages" paid were not commensurate with the services rendered seems to bite hard in the opposite direction from what the council concludes. If $200.00 or $300.00 is not commensurate with the services of either of the parties it is less so if it is to be considered earned by both.

The Council attaches much importance to the fact that the minutes of the board of directors of the school refer in two instances to the salary of Mr. and Mrs. Otteson. But in two later instances the minutes refer to the salary of Mr. Otteson singly. It is true that correspondence with the Bureau noted above speaks of "our salaries" in referring to the money paid to plaintiff by the school prior to his application for benefits. But plaintiff's understanding of his wife's rights with respect to the salary payments vis-a-vis his own does not determine this controversy. Whether the plaintiff or his wife were jointly or severally entitled to compensation lies in the contract by which they were employed. Moreover the issue is concerned with whether the salary paid to plaintiff's wife after September 1958 is joint or separate, not with what the salary paid to plaintiff before this date was in-

tended to represent. The parties were at liberty to enter into a salary arrangement completely independent of the earlier method of compensation.

The record is wholly lacking in evidence that would tend to prove that it was the intent of the parties after September 1958 that the salary paid to Mrs. Otteson was in consideration of the services of Mr. Otteson. It may well be that Mrs. Otteson's salary will inure to the benefit of Mr. Otteson but this does not make it his salary. To prove such a condition it would be necessary to show that the payments to Mrs. Otteson in part represent the agreed exchange for Mr. Otteson's services. The Appeals Council concedes in its opinion that Mrs. Otteson is earning her salary and is entitled to it yet its whole decision depends upon a finding that her salary is in part payment for plaintiff's services. These two propositions are antagonistic and the manner in which they are related to the conclusion is at the heart of the decision.

The court concludes that the decision of the Secretary is not supported by substantial evidence and must therefore be reversed. A judgment in conformity herewith is this day entered.