**Leon RUBENSTEIN, Plaintiff,**

v.

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.**

**No. 65 C 52(2).**

United States District Court
E. D. Missouri, E. D.

Sept. 15, 1965.

928

Burnett Schwartz, Schwartz, Schwartz & Gilden, St. Louis, Mo., for plaintiff.

Richard D. FitzGibbon, Jr., U. S. Atty., Wm. C. Martin, Asst. U. S. Atty., St. Louis, Mo., for defendant.

MEREDITH, District Judge.

## MEMORANDUM

Plaintiff, a resident of St. Louis, Missouri, brings this action to review a final decision of the Secretary of Health, Education and Welfare which determined that he was not eligible to receive old age insurance benefits for the years 1962 and 1963, because he had received wages in excess of what is permitted by the Social Security Act, 42 U.S.C.A. § 403(b) and § 403(f). Jurisdiction exists by virtue of § 405(g) of the Act which gives this Court "power to enter, upon the pleadings

and transcript of the record, a judgment affirming, modifying or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." The Secretary has filed an answer having attached to it a certified copy of the transcript of the administrative record as required by the Act, and has moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has also moved for summary judgment.

Plaintiff filed his application for old-age insurance benefits February 23, 1962. The Bureau of Old-Age and Survivors Insurance of the Social Security Administration determined that he became entitled to a monthly benefit of $123 in March 1961, when he attained sixty-five years of age. However, it was further decided that plaintiff was not eligible to receive benefits for 1961 and 1962 because he was still rendering substantial services as an employee of Arrow Auto Parts, Inc., and was receiving "an economic benefit by reason of the services rendered of a sufficient amount to require the imposition of work deductions in all months after 1961." Following this denial of his claim, plaintiff requested a hearing as provided in 42 U.S.C.A. § 405(b). The hearing examiner determined that plaintiff had excess earnings in 1961 but not thereafter and was entitled to receive benefits commencing January 1962. The Appeals Council of the Bureau of Hearings and Appeals upon its own motion reviewed the decision of the hearing examiner and determined that his decision should be reversed concerning the year 1962. Since the evidence before it also covered the year 1963, it further decided that plaintiff was not entitled to receive benefits for that year.

Plaintiff has been a part owner of Arrow Auto Parts for many years. The concern was incorporated in 1954. During the period of time in question plaintiff owned approximately 51% of the stock; his son-in-law, Sidney Biernbaum, owned 32%; his son 5%; and the remainder was owned by his wife. In January 1962 a special meeting of the Board of Directors was held at which plaintiff

> " * * * expressed a desire to limit the time which he devoted to the affairs of the business while at the same time expressing a willingness to continue to give advice and counsel and assist in the making of business decisions." (Tr. 90)

The Board determined that plaintiff should continue to hold the office of president, that he should be free to limit his hours to approximately four hours a day and to take such vacations as he deemed in his best interest, and that his salary for his services be reduced to $100 per month. Evidence concerning plaintiff's subsequent activities at the business appears in a number of statements submitted by plaintiff, a statement by his son-in-law and his wife, the report of a field representative, and plaintiff's testimony before the hearing examiner. It is conceded that plaintiff spent from four to six hours a day at the business for approximately forty-two weeks in 1962 and that these figures also reflect generally the extent of his presence in 1963. Plaintiff's earliest descriptions of his activities refer to him figuratively as a "watchman":

> "I come in to look over business, see if it is running right, and, for my investment of time and energy through my life, protect the business from going under. I feel this way that if something is being done wrong or is not being done, I can catch it and fix it up." (Tr. 95)

Subsequent statements indicated that after January 1962, plaintiff's presence was simply to give him something to do and that Mr. Biernbaum, who had been associated with the business for twelve years, had taken over the active management. The report of the Field Representative (Tr. 170–173) was to the effect that employees and customers now looked upon Mr. Biernbaum as "boss." Plaintiff did assist his wife with some of the bookkeeping, making up the payroll, figuring withholding taxes, etc. Also, he was available to provide advice to Mr. Biernbaum if that should be necessary.

The allegation that he greatly reduced his involvement in counter clerking, due to progressively worse ill health, is supported by the fact that an additional counter clerk had to be hired while volume of business remained about the same.

On the basis of this and similar evidence, the hearing examiner determined that plaintiff was effectively in retirement, performing little activity in the business since January 1962. The hearing examiner also determined that plaintiff was not receiving wages in excess of $100 per month. This latter question involved the amount of wages being paid plaintiff's wife and the amount of rental paid for the building, which plaintiff owned. Except for a period of about two years, around 1957–59, plaintiff's wife had been actively working for the company. Prior to 1961 she was paid little for her services. In 1961 she began to receive a salary of $75 a week. With regard to the rental, the evidence shows an increase from $150 per month in 1961 to $300 per month in 1962 and to $350 per month in 1963. The hearing examiner's findings on these two questions are quite simple: plaintiff's wife has performed more services since 1961 and, at any rate, the wage paid her is reasonable in light of the services performed; the rental paid for the building is in line with the nature and location of the property. Accordingly, he felt these transactions were bona fide.

Prior to reviewing these findings, the Appeals Council secured copies of the income tax returns of the corporation and of plaintiff and his wife for the years 1960–63. Prior evidence showed that each year the company would divide some of its net profits by way of "bonuses" to officers. Prior to 1962 no such bonus had been paid to plaintiff's wife, although she had always been an officer. Evidence before the hearing examiner indicated that no such bonus would be paid to plaintiff's wife. However, the income tax returns for the years 1962 and 1963 reveal that she received bonuses of $1,100 and $700, respectively, in those years. The tax returns also reveal that prior to 1961 plaintiff had been receiving approximately $9,000 per year in salary. Further, these tax returns show that the 1963 depreciated book value of plaintiff's building was $2,797.54 and that since 1955 the *corporation* had added building and parking lot improvements valuing over $14,000. The returns also show that the corporation pays all the costs of building upkeep and repairs.

On the basis of the original and these added facts, the Appeals Council decided: (1) plaintiff "continued to render services for the corporation worth considerably in excess of $100 a month, and that any transactions between the claimant and the corporation must be carefully considered in order to determine whether indirectly the claimant received any other payments from the corporation which were, in fact, remuneration for his services," (Tr. 5) and (2) that the bonus paid to his wife and rental in excess of $250 per month in fact represented additional remuneration to the plaintiff. Accordingly, the Council determined that plaintiff's wages in 1962 and 1963 were $2,900 and $2,950, respectively.

■■ The scope of this Court's review is limited by 42 U.S.C.A. § 405(g):

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * *."

The meaning of "substantial evidence" has been amply defined in Brasher v. Celebrezze, 340 F.2d 413 (8 Cir. 1965), and Celebrezze v. Bolas, 316 F.2d 498 (8 Cir. 1963). While the term requires a reference to the whole record, Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, it is safe to analogize the term to the test for a directed verdict. At the same time, the Court does not abandon its "conventional judicial function," Universal Camera, supra, at page 490, 71 S.Ct. 456, particularly in cases where the Appeals Council has reversed the determination of the hearing examiner. Since the decision of the Appeals Council constitutes the "final decision" of the Secretary, ordinarily it is the findings of the Appeals Council and

not those of the hearing examiner which are conclusive if supported by substantial evidence. Brannon v. Ribicoff, 200 F.Supp. 697 (D.C.Mont.1961). However, a different rule is to be applied when the contested findings concern primary fact and turn basically on the credibility of witnesses. Tucker v. Celebrezze, 220 F. Supp. 209 (N.D.Ia.1963), and Perkins v. Flemming, 191 F.Supp. 137 (S.D.Calif. 1961). In such cases the hearing examiner's findings should be given great weight.

■ There can be no doubt that the Secretary has the authority to investigate the bona fides of the transactions of closely held family corporations which appear designed to qualify an individual for social security benefits, while in fact preserving the status quo ante. Brannon v. Ribicoff, supra; Stark v. Flemming, 283 F.2d 410 (9 Cir. 1960). But, if the transaction is bona fide, and in adherence to normal corporate routine, the Secretary cannot attack the transaction simply on the basis of the motives behind it. Stark, supra. Accordingly, if the wages paid to plaintiff's wife and the rental for the property are reasonable, in light of the services rendered and the property rented, the Appeals Council would not be permitted to find the transactions were merely a channeling of income to the plaintiff absent some very clear evidence to that effect. The Secretary has placed much reliance on the cases of Poss v. Ribicoff, 289 F.2d 10 (2 Cir. 1961), and Davis v. Celebrezze, 217 F.Supp. 911 (D. Vt.1963). In those cases it was quite clear that the husband continued to do the work for which the wife was being paid. In the present case it is quite clear that at least three people, Sidney Biernbaum, an additional clerk, and plaintiff's wife, have assumed a significant portion of the work formerly done by plaintiff.

■■ The limitations on the range of the Secretary's investigation have been set out above in order that there may be no mistake as to the decision of this Court. The Court cannot accept the speculation in the Appeals Council's decision that the salary being paid plaintiff's wife might be considered an indirect channeling of wages to plaintiff. Instead, we must defer to the hearing examiner's finding that this salary was reasonably related to the services performed and was bona fide. The mere fact that she had previously worked without compensation, or the fact that the nature of her services had changed little, would not support a contrary finding by the Appeals Council. Otteson v. Ribicoff, 210 F.Supp. 601, 603 (E.D.Ky.1962). We do, however, affirm the Appeals Council's final finding that the bonuses and part of the rentals should be considered as wages to the plaintiff.

■■ The hearing examiner did not find that plaintiff's services were worth no more than $100 per month. There is certainly "substantial evidence" to support the Appeals Council's finding that his services were worth considerably more than $100 per month. In view of plaintiff's previous salary, it would appear that his assistance with bookkeeping and the availability of his managerial experience would be worth quite a bit more than he was paid. This, standing alone, infers nothing, but it does justify taking a long hard look at the salary and rental changes. The additional evidence before the Appeals Council, that bonuses had been paid to plaintiff's wife and that the corporation had financed substantial improvements on the building, certainly constitute substantial evidence to support the ultimate findings. We cannot say that the formula by which the additional rental was apportioned was unreasonable. With regard to the bonuses, the company history indicates these were paid out to those who performed managerial functions, plaintiff and Mr. Biernbaum. Therefore, the Appeals Council was justified in finding that the bonuses paid to plaintiff's wife were, in fact, compensation for his services. Plaintiff has strenuously argued that the Appeals Council has misconstrued the evidence before it, particularly that concerning the extent of plaintiff's financial interest in the business, the level of plaintiff's activity in the business, and the reasonability

of the rental being charged. But, it cannot be denied that the Appeals Council was fully justified in exactingly scrutinizing the evidence before it. In this situation, plaintiff's arguments are unfortunately late. The weight of the evidence was for the Appeals Council, not for this Court.

Since the record discloses no genuine issue of fact concerning the existence of "substantial evidence" to support the Secretary's decision, the defendant's motion for summary judgment will be granted.