## Stuart H. CARLSON
v.
## Elliott RICHARDSON, Secretary of Health, Education and Welfare.
### Civ. No. 13925.

United States District Court, D. Connecticut.

May 20, 1971.

David C. Wichman, Manchester, Conn., for plaintiff.

B. Blair Crawford, Asst. U. S. Atty., Hartford, Conn., for defendant.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

BLUMENFELD, District Judge.

This is an action under 42 U.S.C. § 405(g) to review a "final decision" of the Secretary of Health, Education and Welfare. The plaintiff has exhausted all administrative remedies,[1] and the Appeals Council of the Social Security Administration informed the plaintiff: "[T]he hearing examiner's decision stands as the final decision of the Secretary in your case."

The case appears in the posture of cross-motions for summary judgment. The pleadings have been filed, together with a transcript of the record of Mr. Carlson's hearing and appeal to the Appeals Council of the Social Security Administration. Section 405(g) specifically provides that judgment of the district court may be entered "upon the pleadings and transcript of the record, * * * affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." There is no material

---

1. The Social Security Administration of the Department of Health, Education and Welfare rendered its decision adversely to the plaintiff on May 22, 1969. On December 12, 1969, the decision of the hearing examiner was rendered, also adverse to the plaintiff. On April 30, 1970, the Appeals Council affirmed the hearing examiner, whereupon the plaintiff filed his complaint in this court.

question of fact which remains to be resolved since the only issue before this court is whether there is "substantial evidence" on the record to support the Secretary's decision.[2]

In August of 1967, plaintiff Carlson applied to the Social Security Administration for Retirement Insurance Benefits to which he was entitled under 42 U.S.C. § 403 upon reaching the age of 62.[3] The Administration informed him that although entitlement to such benefits was established, his benefit payments were totally offset by his wages and earnings for 1967. A similar decision was rendered in 1969, applying to plaintiff's claim for benefits in 1968. Plaintiff pursued both claims through a single administrative hearing, after which it was decided and sustained on appeal that plaintiff had failed to prove that his benefits for 1967 and 1968 were not offset by substantial wages and earnings in those years. The plaintiff here contends that that decision is not supported by substantial evidence.

At the heart of the dispute in this case is § 403(f) which provides that an individual over 62 may earn $1,500 ($1,600 after 1967) in his taxable year without losing any retirement benefits to which he is entitled.[4] However, if his earnings from wages or substantial services rendered in self-employment[5] exceed that amount, his benefits will be offset by such earnings.[6] Since the burden is on the applicant to establish by acceptable and convincing evidence that he is eligible to receive payment of benefits,[7] *see* Washburn v. Flemming, 189 F.Supp. 624 (D.Mass.1960), and Billman v. Folsum, 172 F.Supp. 388 (D. Minn.1959), Carlson had to prove that he received no wages or income from self-

---

2. Section 405(g) in pertinent part provides:

"Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. * * * The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive."

3. Plaintiff also filed a supplemental application naming his three minor children as his dependents.

4. The statute provides as follows:
"§ 403. Reduction of insurance benefits—Maximum benefits
* * * * *
"(b) Deductions, in such amounts and at such time or times as the Secretary shall determine, shall be made from any payment or payments under this subchapter to which an individual is entitled, and from any payment or payments to which any other persons are entitled on the basis of such individual's wages and self-employment income, until the total of such deductions equals—
"(1) such individual's benefit or benefits under section 402 of this title for any month,
* * * * *

"(f) (3) For purposes of paragraph (1) and subsection (h) of this section, an individual's excess earnings for a taxable year shall be his earnings for such year in excess of the product of $140 multiplied by the number of months in such year, except that of the first $1,200 of such excess (or all of such excess if it is less than $1,200), an amount equal to one-half thereof shall not be included. The excess earnings as derived under the preceding sentence, if not a multiple of $1, shall be reduced to the next lower multiple of $1."

5. 42 U.S.C. § 411 specifically excludes rental income from real estate (or personal property leased with real estate); dividends; and capital gains from the computation of earnings from self-employment.

6. Benefits are offset at a rate of $1.00 for each $2.00 of earnings between $1,500 and $2,700 ($2,800 after 1967), and $1.00 for each dollar over $2,700 ($2,800 after 1967). Thus, according to the government's calculations, if the plaintiff received $4,535 or more in 1967 and $5,973 or more in 1968, his benefits would be reduced to zero.

7. Section 403(f) (4) (A) and (B) provides as follows:
"(A) An individual will be presumed, with respect to any month, to have been engaged in self-employment in such month until it is shown to the satisfac-

employment during 1967 and 1968 which would reduce his benefits. To defeat his claim, the hearing examiner was not required to find affirmatively that Carlson did in fact receive earnings of such a character and amount, but only that Carlson had failed to sustain his burden of proving that he had not. The inquiry here is whether there is substantial evidence on the record to support the hearing examiner's finding that Carlson's proof of his own eligibility was lacking.[8]

The facts established on the record, and discussed at length in the hearing examiner's opinion, may be summarized as follows: Until 1967, plaintiff was an employee of and in complete charge of operating two closely held family corporations, SHVC, Incorporated, and Carlson's Express.[9] SHVC is primarily a real estate holding company which owns the offices, warehouse and land of both corporations. Carlson's Express was engaged in the freight transport business. In 1965, plaintiff caused most of the inter and intra-state rights in the certificate under which Carlson's Express operated to be sold to "Laskas Motor Lines" for $137,000. He himself sold certain motor vehicle equipment for an additional $41,000. Carlson also sold his home to SHVC corporation which is being paid for in weekly payments of $100. He continues to live in the house with his children but pays no rent.

Carlson keeps an office at his place of business and continues to work there every day. He acknowledged at the hearing that he is the moving force and runs both businesses "to protect the interests of his children." Several visits to this place of business confirmed Carlson's continued activities.

In 1966, Carlson was paid $10,400 by Carlson's Express and $9,505 by SHVC, Inc. He contends that in 1967 he received a total of $3,000 from both as of February,[10] but anticipated receiving only $750 from each corporation for the remainder of the year, due to his "retirement." Thus, the plaintiff's income theoretically dropped from $20,000 in 1966 to $1,500 in 1967. The examiner noted that he found no adequate explanation of what happened to the savings presumably achieved by the corporations as a result of this slash in executive salary. In order to clarify the corporate history and certain discrepancies in the corporate and personal tax returns, the examiner requested the plaintiff to submit earlier tax returns of the corporations as well as his own, which the plaintiff failed to do. As a result, the examiner was not convinced by adequate proof that the plaintiff had retired in 1967 and had ceased to receive substan-

---

tion of the Secretary that such individual rendered no substantial services in such month with respect to any trade or business the net income or loss of which is includible in computing (as provided in paragraph (5) of this subsection) his net earnings or net loss from self-employment for any taxable year. The Secretary shall by regulations prescribe the methods and criteria for determining whether or not an individual has rendered substantial services with respect to any trade or business.

"(B) An individual will be presumed, with respect to any month, to have rendered services for wages (determined as provided in paragraph (5) of this subsection) of more than $140 until it is shown to the satisfaction of the Secretary that such individual did not render such services in such month for more than such amount."

*See* 20 C.F.R. §§ 404.701 and 404.1002–1090.

8. The finding and decision of the hearing examiner read as follows:
   "The Hearing Examiner finds that claimant, based upon the entire record and his failure to carry the burden of proof, is not eligible to receive monetary benefits for any month from his alleged retirement in March 1967 through the present * * * and that the deductions imposed by the Administration were correct and proper."

9. Carlson himself owns 98% of the stock of Carlson's Express. He owns 20% of the SHVC stock, but the remaining 80% is owned by his four children.

10. The corporations are on a fiscal year ending February 28 and March 30 for federal income tax purposes.

tial income from his family corporations, and the plaintiff may not rely on such unsubmitted evidence to support his position. *Cf.* Sellmayer Packing Co. v. Commissioner of Internal Revenue, 146 F.2d 707, 714 (4th Cir. 1944). The examiner stated:

> "The claimant's corporate picture is complicated and also earnings as an individual and self-employed person. [sic] Claimant reports earnings as a self-employed individual for the rental of equipment which are those rights retained from 'Carlson's Express' wherein he sold the majority of his inter and intra-state rights to 'Laskas Motor Lines' in 1965 for an amount in excess of $175,000. The claimant's loan system wherein a corporation will owe money to the other corporation, his conveyance of his personal home to one of the corporations and the repayment to claimant in the amount of $100 a week are all complications which defy financial clarity in order to determine exactly what claimant's earnings are. * * * [T]he Hearing Examiner not only has a right but a duty to work behind family corporations in determining a person's right to entitlement to Retirement Insurance Benefits. In short, the claimant has not changed his method of business but has merely gone through a bookkeeping operation to reallocate funds which would allegedly entitle him to Retirement Benefits."

From an examination of the entire record, *see* Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), it appears that the facts as outlined above constitute substantial evidence to support the Secretary's final decision. The hearing examiner was correct in stating that he has the authority to examine the bona fides of transactions of closely held family corporations. *See* Dondero v. Celebrezze, 312 F.2d 677 (2d Cir. 1963); Rubenstein v. Celebrezze, 247 F.Supp. 927 (E.D.Mo.1965). Thus, the examiner was not bound, as the plaintiff contends,

to respect the corporate entity for purposes of establishing the plaintiff's income. Furthermore, the regulations promulgated by the Secretary under 42 U.S.C. § 403(f) (4) (A) and (B) specifically state that when insufficient evidence is furnished by the applicant and more is requested of him, his failure to submit such evidence shall be the basis for determining that his entitlement has not been established. *See* 20 C.F.R. § 404.701.

Although the hearing examiner did not make an affirmative finding as to the amount of income earned by Mr. Carlson from self-employment, there is substantial evidence to support his finding that Mr. Carlson failed to prove both that he was "retired" and was not receiving income in excess of his projected benefits as compensation from employment. Accordingly, his claim for Retirement Benefits was correctly denied.

The defendant's motion for summary judgment is granted and the plaintiff's motion is denied.